## VERN BOERGER v. AMERICAN GENERAL INSURANCE COMPANY OF MINNESOTA.

100 N. W. (2d) 133.

December 18, 1959—No. 37,734.

*Schermer & Gensler* and *Irvin E. Schermer,* for appellant.
*Ahles & Ahles* and *Phillips & Donohue,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

The action was commenced by Vern Boerger against the American General Insurance Company of Minnesota, hereafter referred to as the insurance company, and arose out of the following circumstances. Boerger operates a taxicab service in St. Cloud and is insured by the

insurance company. At approximately 5:45 p. m. on October 8, 1954, one of his cabs, carrying Delores Anderson as a passenger, and operated by Oren C. Rolstad, an employee, was proceeding west on First Street North, approaching the intersection with Sixteenth Avenue. The weather was rainy and misty and the visibility was not good. Another car, driven by Harold Gaevert, was proceeding south on Sixteenth Avenue toward the intersection with First Street.

The intersection was uncontrolled. There were buildings on each of the four corners. The building to the right of the taxicab as it approached the intersection was set 22 feet from the curb of Sixteenth Avenue. By virtue of this building, a car coming from the north would not be visible to the cab driver if it was more than 100 feet north of the intersection when the cab was 40 feet from the intersection.

It is undisputed that the impact occurred in the northwest quarter of the intersection when the front end of the Gaevert car came in contact with the right rear of the cab. The passenger, Delores Anderson, was killed as a result of the collision.

The deceased was survived by a son, James, who was then 8 years of age. Genevieve Goman, deceased's mother, as trustee for that purpose, commenced a wrongful death action against Boerger, Rolstad, and Gaevert in which she asked for damages of $17,500. The attorney for the insurance company notified Boerger that the amount was in excess of the policy limit (which was $10,000 for death arising out of his liability) and informed him of his right to retain personal counsel, although the insurance company retained exclusive control of the defense of the suit and the final determination of settlement.

Boerger retained an attorney and it was decided between his attorney and the attorney for the insurance company that Boerger's attorney would attempt to negotiate a settlement. This he attempted to do but to no avail, and he indicated to counsel for the insurance company that they might as well prepare for trial.

The attorney for the insurance company in a report to it on December 9, 1954, advised that "it is practically impossible to expect a jury to find the assured's driver wholly free of negligence in the accident." On January 21, 1955, after reviewing the case, the claims manager for the insurance company reported to its attorney as follows:

"After reviewing the file, it appears that there is no question but that both parties will be held in by the court. I feel that the largest amount which the jury might award would be $8500.00. It is my further feeling that a reasonable settlement of this case should run in the neighborhood of $5000.00."

The trial began on June 15, 1955. After the close of the evidence, counsel for Boerger indicated to the attorney for the insurance company that they should again attempt to negotiate a settlement. They were notified, as is pertinent to this appeal, that plaintiff would be willing to settle for $12,000, $10,000 in cash, and $2,000 by a note from Boerger. The attorney for Boerger demanded that the insurance company accept the settlement even though it constituted the limits of its liability. The attorney for the insurance company contacted the company and, upon his recommendation, was given authority to pay $8,000 toward settlement.

The case was submitted to a jury which absolved Gaevert and returned a verdict of $17,500 against Boerger and his driver. Thereafter Boerger brought this action for $5,729 damages against the insurance company on the grounds that it had, through its counsel, acted in bad faith in not settling the case for the limit of its liability. In not doing so Boerger contended that it subjected him to a liability of $5,729 in excess of the $2,000 he would have paid in settlement at the close of the evidence. The question of bad faith was submitted to the jury which returned a verdict in favor of Boerger in the amount of $5,979.75.

The sole issue on this appeal is whether there is evidence to sustain the finding that the insurer did not act in good faith and upon reasonable grounds in rejecting the proposed settlement.

This court has previously dealt with the question of good faith in Mendota Elec. Co. v. New York Ind. Co. 169 Minn. 377, 211 N. W. 317, and in Larson v. Anchor Cas. Co. 249 Minn. 339, 340, 82 N. W. (2d) 376, 378, where we stated the rule as follows:

"The rule in this state is that a liability insurer, having assumed control of the right of settlement of claims against the insured under a policy which gives it the exclusive right to defend and settle, may become liable in excess of its undertaking under the policy provisions

if it fails to exercise 'good faith' in considering offers to compromise the claim for an amount within the policy limits; there must be bad faith on the part of the insurer with resulting injury to the insured before there can be a cause of action against the insurer for the excess over its undertaking."

We are of the opinion that the insurance company could have validly declined the offer of settlement if good faith existed on either one of two grounds. First, if it in good faith believed that its insured was not liable. Second, even if liability of its insured was certain, if it believed in good faith that a settlement at the proposed figure which it was required to contribute was greater than the amount the jury would award as damages. In other words, in the instant case in view of the fact that the terms of the proposed settlement were that the insurance company must pay the limit of its liability of $10,000, it must in good faith and upon reasonable grounds have believed that the jury verdict would be less than that amount.

With regard to the first question, it may appear at the outset that in an intersection accident of this type liability may not be certain. However, in view of the duty of the highest degree of care owed by a common carrier to its passengers (3 Dunnell, Dig. [3 ed.] § 1261, note 75), we think the evidence sustains a finding that the insurance company through its attorney could not have rejected the offer of settlement in good faith on the ground that its insured was not liable, both from the evidence here and that at the original trial, which was made a part of the record. Statements by the insurance company's counsel and claims manager clearly indicated that they were of the opinion that its insured would be held liable.

Taking the evidence most favorable to the insured, namely, that at the time his cab driver was approximately 8 to 10 feet from the east curb line of Sixteenth Avenue, he first noticed the Gaevert automobile to his right approaching from the north about 150 to 160 feet from the intersection; that the cab was going approximately 10 miles an hour; that he had no opinion of the speed of the Gaevert car; and that the visibility was not good and the streets were wet, yet even under these circumstances the cab driver testified that "I applied the gas," and "I speeded up quite fast."

These circumstances, at least in view of the high degree of care owed by Boerger or his employee to the passenger and the statements by the agents of the insurance company prior to the trial, do not constitute reasonable grounds for rejection of the offer of settlement based upon the belief that the insured would not be held liable.

With respect to the second question—whether the amount they would be required to contribute under the proposed settlement was in excess of the amount the jury would award—this incident appears pertinent. The attorney for the insurance company, after the question was submitted to the jury and in the presence of the other attorneys, made the statement that in his opinion the jury would return a verdict which would not exceed $13,500.

With respect to the evidence as to the extent of the recovery, the deceased was divorced and under the divorce decree her husband, who had since remarried, was obligated to pay $35 per month to support the child. The attorney for the insurance company indicated in the record that he based his opinion that the verdict would not exceed $8,000 or $8,500 on the following computations: That $75 per month would be necessary to support the child, less the $35 per month that the father was bound to pay under the divorce decree, plus $800 to cover funeral expenses, plus $4,000 to $5,000 for the education of the child.

Based on his figures, assuming 144 months for a 9-year-old boy to reach maturity, the amount of the verdict would have been $10,560, if $4,000 were allowed for the education of the child, or $11,560, if $5,000 were allowed for the education of the child. The evidence also indicates that Delores Anderson paid $10 per week at first and then $7 per week to have her son cared for while she was working. Also the evidence indicates that the child's father had been in default on his payments for 3 months prior to the first trial. It is true that a father has the primary obligation to support the children. However, it is equally true that upon the failure of the father to perform such primary duty the secondary duty of support is upon the mother. See, 14 Dunnell, Dig. (3 ed.) § 7302.

Also bearing on the question of bad faith, according to Boerger's

attorney, were statements made by the attorney for the insurance company at the time the negotiations as to the settlement took place. Boerger's attorney testified that the attorney for the insurance company told him, "Well, the most we can lose, in any event, is $10,000.00; regardless of how this case goes," and "so why should we pay that out in settlement, if that's the most we can lose, regardless of what happens." See, Tennessee Farmers Mutual Ins. Co. v. Hammond (Tenn. App.) 306 S. W. (2d) 13, 21.

With respect to the duty an insurance company owes to an insured when a settlement figure is offered, in American Fidelity & Cas. Co. v. G. A. Nichols Co. (10 Cir.) 173 F. (2d) 830, 832, the court said:

"* * * While the insurance company, in determining whether to accept or reject an offer of compromise, may properly give consideration to its own interests, it must, in good faith, give at least equal consideration to the interests of the insured and if it fails so to do it acts in bad faith."

From the record here we think there is sufficient evidence to support a finding that the insurance company, through its attorney, acted in bad faith in rejecting the offer of settlement which required it to pay the limit of its liability under its contract of insurance with the insured.

Affirmed.