LARRY WAYNE PETERSON, ASSIGNEE OF
CLETUS D. HOWARD, TRUSTEE FOR BANKRUPT ESTATE
OF WESLEY E. JOHNSON, v.
AMERICAN FAMILY MUTUAL INSURANCE COMPANY.

160 N. W. (2d) 541.

June 28, 1968—No. 40,635.

*Robins & Meshbesher* and *Michael L. Robins,* for appellant.

*Stringer, Donnelly & Sharood, Philip Stringer,* and *Arthur J. Donnelly,* for respondent.

OTIS, JUSTICE.

This action is brought by the assignee of an insured motorist to recover from the insurer the amount of a verdict in excess of the policy limits, for which the assignee claims the insurer is liable by reason of its bad faith in failing to settle a claim within the policy limits. The assignee was also the plaintiff in the original action and took an assignment of insured's cause of action from the trustee in bankruptcy proceedings instituted by the insured. The assignee appeals from summary judgment rendered in favor of defendant insurer. The issue is whether the record

requires a finding that the insured has foreclosed a claim of bad faith by the testimony he gave in bankruptcy court, or whether supplementary affidavits executed by his attorneys in these proceedings require a trial on the merits. We have determined that the judgment must be affirmed.

On September 28, 1963, plaintiff, Larry Wayne Peterson, was involved in an automobile accident when a car which he was driving collided with one driven by Wesley E. Johnson. Johnson carried automobile liability insurance with the defendant, American Family Mutual Insurance Company, with limits of $10,000 for injury to any one person. Peterson sued Johnson for $125,000 and recovered a verdict of $35,500. Defendant insurer paid Peterson $10,304.50, leaving $25,630.45 unsatisfied. Thereupon, the insured, Johnson, filed a petition in bankruptcy in the United States District Court for the Western District of Wisconsin.[1]

Plaintiff tried unsuccessfully to persuade the referee in bankruptcy to authorize the trustee to bring this action against the insurer. It is the testimony which the insured, Johnson, gave in those proceedings which governs the disposition of this appeal. After being denied the right to have suit brought on behalf of the bankruptcy estate, plaintiff secured from the trustee an assignment of the bankrupt insured's claim against the defendant insurer. This action followed.

In the proceedings before the referee in bankruptcy held on March 28, 1966, to determine whether this action should be brought in the name of the trustee, the substance of Johnson's testimony was as follows: He stated that after he was served with the summons and complaint in the action brought by Peterson against him for personal injuries, he discussed with the defendant insurance company the fact that the claim exceeded his policy limits. He informed the company that in his own mind he was not in the wrong and was sure he could recover on a counterclaim. Counsel for the insurer advised him he was entitled to retain his own attorney. They told him he had a good defense, that it was possible he would win but beyond that they could not predict the outcome. He

---

[1] Although this accident occurred in Minnesota, it appears that the insurance was written in Wisconsin where the insured lived. However, plaintiff concedes that the substantive law which governs liability in these proceedings is the same in Minnesota as it is in Wisconsin.

was sure in his own mind that he would prevail, and the insurance company did not tell him he could not. They left it up to him, stating there was no reason why he couldn't recover. Prior to trial, he was advised by the company that Peterson had made an offer to settle within the policy limits. When asked whether the insurer told him that they wanted to settle with Peterson, Johnson replied, "No. It was my reason to believe I was not in the wrong in any way in that accident, and that is why we—I wanted to take it to trial." He was warned before trial that if he lost the case there might be a judgment against him for more than his insurance coverage. Nevertheless, he asserted a counterclaim "because I wanted it and it was not my fault at all." He did not feel that the insurance company should pay plaintiff any money because of the accident. The insurance company did not believe they would lose the case, but Johnson realized before trial that if a large judgment was rendered against him he might have to go through bankruptcy. Counsel for the insurer did not advise him that they would settle for $9,000 if Johnson wished them to do so. When asked if he had any idea before trial how much the verdict would be, he stated:

"How am I supposed to answer that? You do not know what a jury will do."

Finally, with respect to a conversation held after trial with counsel for Peterson, Johnson stated:

"They wanted me to sign an agreement to a lawsuit on my own insurance company and I disagreed to do it because I had no feeling I was in the wrong in this accident and the insurance company should not have been liable."

■ Unless this testimony of Wesley Johnson may be contradicted or impeached by his assignee, the trial court was correct in holding as a matter of law that Peterson cannot now assert bad faith on the part of the insurer. The law on the question of an insurer's liability for failing to effect a provident settlement is well settled in this state. Mendota Elec. Co. v. New York Ind. Co. 169 Minn. 377, 380, 211 N. W. 317, 318; Id. 175 Minn. 181, 221 N. W. 61; Lawson & Nelson Co. v. Associated

Ind. Corp. 204 Minn. 50, 282 N. W. 481; Larson v. Anchor Cas. Co. 249 Minn. 339, 355, 82 N. W. (2d) 376, 386; Boerger v. American General Ins. Co. 257 Minn. 72, 100 N. W. (2d) 133. Where the insured is clearly liable and the insurer refuses to settle within the policy limits, its decision must be made in good faith and it must have reasonable grounds to believe that the amount demanded for settlement is excessive. A mere mistake in judgment does not, standing alone, constitute bad faith. "No mortal has the gift of prophecy." [2] The insured has the burden of proving that the insurer acted in bad faith in rejecting an offer of settlement within the policy limits.

Because the complaint alleges that this defendant refused an offer to settle for less than $10,000, for purposes of reviewing the summary judgment we must assume that allegation to be true. That fact, however, is not enough to impose liability. The company had invited the insured to retain his own counsel, which he declined to do. Johnson was fully aware of the risks inherent in a jury trial. Not only did he refrain from demanding a settlement within the policy limits, but he insisted on going to trial because he was satisfied he was in no way to blame for the accident.[3] It is significant that even after the verdict, Johnson felt so strongly that he was not culpable, he refused to execute an assignment to this plaintiff because, he said, "the insurance company should not have been liable." In the absence of any probative evidence that the insurer misled Johnson with respect to his vulnerability, it is clear that it was his voluntary and considered decision to try the case. Under these circumstances, it can hardly be claimed that his insurer is liable to him for not having insisted upon a settlement within the policy limits. The gravamen of an insured's claim for bad faith in refusing to settle is a showing that the insured had demanded the insurance company accept an offer within the policy limits and that the company was arbitrary in refusing to do so, subverting the insured's interests to its own. Here that element of the cause of action is wholly absent.

---

[2] "* * * We do not believe the test of bad faith should be determined by hindsight." Hodges v. Standard Acc. Ins. Co. 198 Cal. App. (2d) 564, 575, 18 Cal. Rptr. 17, 24.

[3] Jackson v. Saint Paul-Mercury Ind. Co. (6 Cir.) 339 F. (2d) 40, 44.

■ Notwithstanding Johnson's testimony at the bankruptcy hearing, his assignee now asserts that the summary judgment should not have been granted because the present plaintiff is denied an opportunity to show by other evidence that the insurer acted in bad faith. At the time the court set down for hearing the motion for summary judgment, it also ordered that all further proceedings be stayed. Plaintiff claims that this foreclosed developing the facts by discovery which was necessary to resist effectively that motion. We do not construe the order as preventing plaintiff from presenting by affidavit facts supporting his claim of bad faith. Johnson himself did not set forth by affidavit facts concerning that issue. The only information before the court in opposition to the motion was furnished by two of this plaintiff's lawyers. Neither affidavit in our opinion complies with Rule 56.05, Rules of Civil Procedure.[4] That rule requires that affidavits be made on personal knowledge and that they set forth facts which are admissible in evidence showing affirmatively that the affiant is competent to testify to the matters recited. The affidavit of one of plaintiff's counsel asserts that much of Johnson's testimony at the bankruptcy hearing was false and untrue; that one of the lawyers for the insurer falsely advised Johnson of the merits of his defense and intentionally failed to provide him with proper advice pursuant to a company policy of acting maliciously and in bad faith to promote its own interests at the expense of its insured. Plaintiff's other attorney by affidavit said that in the opinion of several trial lawyers "of high repute" Johnson could not have prevailed at the trial. None of these statements purported to be within the personal knowledge of the affiants, nor did they indicate the source of their information. The attorneys were incompetent to testify at the trial if they were also acting as the plaintiff's counsel. Their claims were merely conclusions without any evidentiary support and insufficient to raise a justiciable issue in the absence of other competent affidavits by persons having knowledge of the facts and being in a position to testify with respect to them.

---

[4] Rule 56.05 provides in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

■ Where, as here, there is no adequate showing at the motion for summary judgment that the insured was laboring under a misapprehension of the facts, the testimony which he previously gave is now binding on him and his assignees. Couillard v. Charles T. Miller Hospital, Inc. 253 Minn. 418, 421, 92 N. W. (2d) 96, 98. We have adopted the rule articulated by the New Hampshire court in Harlow v. Leclair, 82 N. H. 506, 512, 136 A. 128, 131, 50 A. L. R. 973, 979, which we quoted in Vondrashek v. Dignan, 200 Minn. 530, 534, 274 N. W. 609, 612:

"* * * If a party's testimony consists only of a narrative of events in which he participated or which he observed, there is an obvious possibility that he may be mistaken like any other witness. In such a situation, if other witnesses give a different version of the occurrence, his testimony must be weighed with theirs and he will not be concluded by his own statements. But when a party testifies to facts in regard to which he has special knowledge, such as his own motives, purposes or knowledge, or his reasons for acting as he did, the possibility that he may be honestly mistaken disappears. His testimony must be either true or deliberately false. To allow him to contradict his own testimony under these circumstances would not be 'consistent with honesty and good faith.' Whether his statements be true or false, he will be bound by them, and contradictions by other witnesses become immaterial. He will not be allowed to obtain a judgment based on a finding that he has perjured himself."

McHardy v. Standard Oil Co. 231 Minn. 493, 499, 44 N. W. (2d) 90, 93; Waldo v. St. Paul City Ry. Co. 244 Minn. 416, 423, 70 N. W.(2d) 289, 294. The insured having unequivocally testified to his knowledge of the hazards and his motives, purposes, and reasons for his decision to go to trial, neither he nor his assignee may now be heard to contradict or impeach that testimony. Stevens v. Northwestern Nat. Cas. Co. (6 Cir.) 305 F. (2d) 513. It was therefore proper for the trial court to grant defendant summary judgment.

Affirmed.