# STEVEN Z. LANGE v. FIDELITY & CASUALTY COMPANY OF NEW YORK.

185 N. W. (2d) 881.

April 2, 1971—No. 42489.

*Lasley, Foster & Roehrdanz* and *W. M. Lasley,* for appellant.
*Dorfman & Rudquist* and *Leo Dorfman,* for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Odden, JJ.

ROGOSHESKE, JUSTICE.

The issues on this appeal from a judgment are whether the trial court erred (1) in finding that defendant, Fidelity & Casualty Company of New York, acted in "bad faith" in refusing to settle a personal-injury action against its insured for the limits of its automobile liability policy; and (2) in determining that plaintiff, a receiver appointed in statutory proceedings supplementary to execution of a deficiency judgment against the insured, is entitled to assert the claim against defendant insurer despite the insured's refusal to do so.

On October 29, 1959, defendant's insured, William Martin, was involved in a three-car accident in Minneapolis. Following the accident, Frank Duffy brought a personal-injury action in district court against Martin, seeking damages in excess of $25,000 upon the claim that Martin's negligence was the cause of the accident and his injuries. At the time of the accident, Martin carried an automobile liability insurance policy with defendant, Fidelity & Casualty Company, with policy limits of $25,000. Defendant undertook the defense of Duffy's action on Martin's behalf, assuming, pursuant to the policy and with Martin's consent, the exclusive right to defend or settle the action. During the pendency of the suit, Martin brought a third-party action for contribution against W. R. Johnson claiming that Johnson's negligence caused the accident. Duffy did not assert a claim against Johnson.

The case was tried to a jury which, on January 23, 1962, returned a verdict in favor of Duffy against Martin for $35,000 and for contribution of one-half the verdict in favor of Martin against Johnson. Thereafter, Martin moved for a new trial on the issue of damages; Johnson moved for judgment notwithstanding the verdict or in the alternative for a new trial on all the issues. On April 14, 1962, the trial judge issued an order denying Martin's motion but granting Johnson's motion for a new trial on condition that if Duffy accepted a reduction in his verdict to $29,000, Johnson's motion for a new trial would be denied. On April 18, 1962, Duffy consented to a reduction of the verdict to $29,000 and served notice of entry and filing of the judge's order.

Thereafter Duffy, through his counsel, offered to accept from Martin the policy limits of $25,000 in full settlement of Duffy's verdict of $29,000. Although defense counsel for insurer, acting on Martin's behalf, did not intend to appeal from the denial of its motion for a new trial on the issue of damages, it did not accept this offer and indicated that the company wanted to negotiate a settlement of Duffy's verdict below its $25,000 policy limits. Counsel was also negotiating at this time with Johnson's insurer in an attempt to settle the contribution verdict.

Duffy entered judgment on his verdict against Martin on June 14, 1962.

Defendant-insurer's counsel, acting on Martin's behalf, did not appeal from either the judge's order denying his motion for a new trial or from the judgment. Johnson appealed from the order denying his alternate motions. In Duffy v. Martin, 265 Minn. 248, 121 N. W. (2d) 343, we granted Johnson a new trial on the issue of liability.

Thereafter, defendant insurer paid $25,000 plus interest and costs on Duffy's judgment.

The retrial of the contribution action was commenced on April 15, 1965. Defendant insurer was substituted for Martin as the real party in interest with the specific understanding that Martin would also be given the benefit of a favorable verdict from the

jury on Johnson's liability. After one day's testimony, defendant insurer settled its contribution claim against Johnson for $4,000, which amount was paid to and retained by defendant insurer. The settlement provided that it was without prejudice to Martin's reassertion of his individual claim for contribution from Johnson in case Martin ever paid the excess portion of Duffy's verdict himself.

On May 21, 1966, Duffy, in proceedings supplementary to execution of the judgment, subpoenaed Martin for an examination concerning his assets. This examination disclosed that Martin owned an automobile and was earning $150 per month in addition to receiving social security benefits. He lived in a house which his wife owned. He was regarded as judgment-proof, and the excess judgment of $4,000 remained unsatisfied.

Duffy then attempted to persuade Martin to commence an action against defendant for "bad faith" refusal to settle with Duffy for $25,000, but Martin refused to do this. Duffy then moved the court for appointment of a receiver to prosecute Martin's cause of action. On July 26, 1967, the court, on Duffy's petition, pursuant to Minn. St. 575.05, appointed plaintiff, Steven Lange, receiver. Lange retained Duffy's counsel to represent him in the present action.

The case was tried before the district court without a jury on January 22, 1970. The court made findings against defendant insurer and ordered judgment on plaintiff's behalf for $4,000 plus interest from January 23, 1962.

Defendant appeals from the judgment.

■■■■■■ The rule in Minnesota is that the insurer must exercise good faith in considering settlement offers.[1] As stated in Larson v. Anchor Cas. Co. 249 Minn. 339, 340, 82 N. W. (2d) 376, 378, "there must be bad faith on the part of the insurer with resulting

---

[1] Peterson v. American Family Mutual Ins. Co. 280 Minn. 482, 160 N. W. (2d) 541; Boerger v. American General Ins. Co. 257 Minn. 72, 100 N. W. (2d) 133.

injury to the insured before there can be a cause of action against the insurer for the excess over its undertaking." Recently, In Herges v. Western Cas. & Surety Co. (8 Cir.) 408 F. (2d) 1157, 1164, the court, applying Minnesota law, discussed the good-faith test in detail. It said, and we agree:

"* * * It requires that the defense be evaluated in terms of the reasonable expectations that that defense will prevail and amount of the verdict if it does not. The settlement offers must then be viewed in light of those expectations, with equal consideration being given to the financial exposure of both the insured and insurer."

The combination of the equal-consideration and good-faith aspects of the rule may be stated as follows:

"With respect to the decision whether to settle or try the case, the insurance company must in good faith view the situation as it would if there were no policy limit applicable to the claim." [2]

In determining whether there is sufficient evidence to support the trial court's finding that defendant, in refusing to settle, acted in "bad faith" without giving equal consideration to insured's interests, we are guided by the rule that findings of facts by the trial court may not be set aside unless clearly erroneous. Rule 52.01, Rules of Civil Procedure. Obviously, the trial court, in finding that defendant acted in bad faith without giving equal consideration to the insured's interests, determined that defendant would not have rejected the settlement offer if there had been no policy limit applicable. We hold there is sufficient evidence to support the findings.

First, there was no reasonable tactical or economic consideration justifying defendant's refusal to accept Duffy's offer to settle for the policy limits. The only justification advanced by defendant is that after the post-trial motions were denied and Johnson, the third-party tortfeasor, perfected his appeal to the

[2] Keeton, *Liability Insurance and Responsibility for Settlement*, 67 Harv. L. Rev. 1136, 1148.

supreme court, the judgment stood at $29,000, and since both insured and Johnson were then jointly and severally liable to the injured claimant, each was liable for $14,500. Defendant insurer contends that it did not want to settle for $25,000 at that time because to do so would reduce Johnson's liability for contribution by $2,000 to $12,500 with no reciprocal concession on Johnson's part. In other words, defendant contends that it was really delaying acceptance of Duffy's offer because Johnson was then responsible for $14,500 of the verdict and the negotiations were such that a $2,000 reduction at that stage was a potential inducement to settle. This reasoning makes little sense in light of the trial court's finding, which is supported by the evidence, that defendant did not at any time contemplate appealing the judgment against its insured.

Defendant contends that even if there was no reasonable tactical or economic consideration justifying its refusal to settle, its refusal was justified by the fact that the insured was not injured by the excess judgment since he was insolvent. In this regard, defendant cites Norwood v. Travelers Ins. Co. 204 Minn. 595, 598, 284 N. W. 785, 786, in which there is language which arguably might be interpreted as indicating that a judgment-proof insured does not suffer any resulting injury from his liability insurer's "bad faith" refusal to settle.

Because we believe that a judgment-proof insured does indeed suffer injury when a claimant obtains a judgment against him in excess of liability insurance policy limits, we now overrule language in the Norwood case to the contrary, and hold, as most states hold,[3] that an insured may bring an action against his insurer for "bad faith" refusal to settle whether or not the insured has paid, or can pay, that part of the judgment which exceeds the policy limits. A judgment-proof insured suffers injury from a judgment against him in excess of policy limits because such a judgment will potentially impair his credit, place a cloud on

---

[3] Annotation, 40 A. L. R. (2d) 168, § 8[a].

the title to his exempt estate, impair his ability to successfully apply for loans, and may eventually require him to go through bankruptcy. Further, if the rule were that a judgment-proof insured suffers no injury from an excess judgment, an insurer's responsiveness to its well-established duty to give equal consideration to an insolvent insured's interests would tend to become meaningless.

Defendant also points out that its insured did not demand that the settlement offer be accepted, citing Peterson v. American Family Mutual Ins. Co. 280 Minn. 482, 160 N. W. (2d) 541, as support for its contention that insured must make such a demand. We did say:

"* * * The gravamen of an insured's claim for bad faith in refusing to settle is *a showing that the insured had demanded the insurance company accept an offer within the policy limits* and that the company was arbitrary in refusing to do so, subverting the insured's interests to its own." (Italics supplied.) 280 Minn. 486, 160 N. W. (2d) 544.

But this language must be read in the context of the facts of that case. There, the defendant insured, who had a counterclaim, insisted on going to trial; he was fully aware of the risks inherent in a jury trial and made a considered decision to try the case because he persistently maintained he was not to blame for the accident. There, the insurer's failure to settle was not unjustified; its insured was advised of the consequences and was invited to retain his own counsel. In the instant case, the evidence did not show sufficient advice by defendant to its insured nor any explanation to him that he would have a deficiency judgment against him and the consequences thereof. Defendant contends its obligation was fulfilled by keeping the insured fully informed of the negotiations with Duffy. We feel that it was incumbent upon defendant to advise the insured that he would be exposed to an excess judgment of $4,000 if Duffy's offer of

$25,000 were not accepted. Defendant was obliged to advise him *in detail* as to the implications of an excess verdict.[4]

This obligation of counsel retained by the insurer is not fulfilled merely by an explanation which amounts to no more than assurances to the insured that his interests are being zealously and faithfully protected by experienced counsel, but rather by laying bare the truth—not only of the potential consequences of a deficiency judgment but of the potential conflict between the interests of the carrier and the insured—in the manner in which the insured would be advised if he consulted private counsel.

Furthermore, we did not say in Peterson, nor did we intend to imply, that the contractual relationship between a liability insurance carrier and the insured in no way involves the public interest in the payment of just claims to parties injured in motor vehicle accidents. That public interest is embodied in our Safety Responsibility Act, Minn. St. c. 170. Under our statutory scheme, a liability insurance policy is not a mere indemnity policy protecting only the insured.[5]

Finally, defendant's conduct in settling the suit for contribution lends additional support to the trial court's findings. The trial of defendant's contribution action resulted in the third-party tortfeasor's paying $4,000 in settlement of defendant's separate claim, while reserving to the insured his right to proceed against the third-party tortfeasor for the amount still due on the judgment should the insured ever pay it—if, for instance, he unexpectedly inherited a large sum of money and thus had the ability to pay. Why this $4,000 recovery was not applied to satisfy the deficiency judgment against the insured is difficult to understand. If the contribution claim had proceeded to trial with judgment against the third party, under the then applicable law of contribution the third party would have been automatically liable

---

[4] See, Keeton, *Liability Insurance and Responsibility for Settlement,* 67 Harv. L. Rev. 1136, 1167 to 1173.

[5] See, Quaderer v. Integrity Mutual Ins. Co. 263 Minn. 383, 387, 116 N. W. (2d) 605, 608.

for $14,500. Surely, defendant would not have retained that recovery and permitted the deficiency judgment to stand against the insured since such a result would have clearly required defendant to discharge its duty of giving equal consideration to the insured's interests. Obviously, defendant was able to retain the entire $4,000 only because it was in complete control of its action for contribution and, unwittingly or otherwise, disregarded the interests of the insured.

We therefore conclude that the evidence supports the trial court's determination that defendant's refusal to settle within the policy limits was unjustified and that defendant acted in bad faith without giving equal consideration to insured's interests.

■ The only other issue presented by this appeal is the right of a statutory receiver to bring the action.

The vast majority of states permit an insured to assign his cause of action against the carrier to the injured claimant, even if there is no express statutory authority permitting such assignment.[6] If, as we believe and defendant concedes, a voluntary assignment is permissible, it would be wholly inconsistent to hold that, upon the insured's refusal, assignment could not be made involuntarily where authorized by statutes governing proceedings supplementary to the execution of a judgment.

Minn. St. 575.05, governing such proceedings, expressly provides that "[t]he judge may appoint a receiver of the debtor's unexempt property." As the trial court pointed out, receivers are regularly appointed to collect assets due a judgment debtor. Such assets, which of course must not be exempt from execution, surely may, and often do, include unliquidated tort and breach-of-contract claims. An insured's "bad faith" breach-of-contract claim sounding in tort is not essentially dissimilar. Additionally, to permit the receiver to bring this action is consistent with the policy objective underlying proceedings supplementary to execution, which is to provide a remedy for a creditor of an insolvent

---

[6] Annotation, 12 A. L. R. (3d) 1158. We have not passed on this issue, but see Peterson v. American Family Mutual Ins. Co. *supra*.

debtor in order that the creditor may pursue the collection of the debtor's nonexempt assets despite the latter's indifference or arbitrary refusal to act.

Affirmed.