## IOWA NATIONAL MUTUAL INSURANCE COMPANY, Appellant,

v.

## AUTO–OWNERS INSURANCE COMPANY, Respondent.

### No. C6–84–2229.

Court of Appeals of Minnesota.

July 30, 1985.

Review Denied Oct. 18, 1985.

Phillip A. Cole, Kay Nord Hunt, Minneapolis, for appellant.

Gene P. Bradt, St. Paul, for respondent.

Heard, considered and decided by POPOVICH, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Iowa National Insurance Co. (excess liability carrier) appeals the trial court's decision that Auto-Owners Insurance Co. (primary liability carrier) was not guilty of bad faith conduct. We affirm.

## FACTS

On August 18, 1978, Bradley Rhodes was struck by a car owned and operated by John F. Dowd. Rhodes sued Dowd for damages claiming negligence.

Auto-Owners Insurance Co. (respondent) had issued a car insurance policy to Dowd, by which it was bound to indemnify him for the first $300,000 of loss caused by the accident. Iowa National Insurance Co. (appellant) issued an umbrella liability policy to Dowd, which insured him to a limit of $1,000,000 in excess of the first $300,000.

Auto-Owners investigated and defended Dowd in the lawsuit. Iowa National claims that Auto-Owners exercised bad faith by its failure to vigorously and timely pursue settlement negotiations within its policy limits.

Auto-Owners claims that the delay in negotiations was due to opposing counsel's inability to get a final medical report and an economic statement on his client. The company also claims that opposing counsel's initial demand was $500,000, not within their claim limits. Auto-Owners countered with an offer up to $75,000. In response, opposing counsel raised its earlier demand to $600,000.

During trial, Auto-Owners raised its offer to $100,000, but plaintiff rejected this offer. Plaintiff did not reduce his $600,000 demand before the jury verdict. Auto-Owners claims that at no time was there any indication that the case could be settled within their policy limit.

It is undisputed that Auto-Owners exhaustively investigated Rhodes' claim and that the company kept Iowa National informed on the progress of the case. Iowa National also had full access to the case file.

Auto-Owners cooperated with Iowa National in providing its investigative material, pre-trial discovery information and its opinion regarding liability. It also kept Iowa National informed of developments in the settlement negotiations. Auto-Owners believed that a defendant's verdict was likely. Iowa National did not offer any sum toward settlement of the Rhodes' claim. At trial, Iowa National presented no evidence to dispute that Auto-Owners acted reasonably and in good faith in its assessment of liability.

The jury rendered a verdict for $640,000 in favor of Rhodes. Iowa National then sued Auto-Owners for bad faith in not entering into timely and meaningful settlement negotiations.

The trial court found this case failed factually and legally. It found as indisputed that although Auto-Owners honestly thought it could win the case, the company initiated settlement negotiations as soon as plaintiff's counsel was willing to do so. It was significant to the court that at no time was a demand made to settle within Auto-Owners policy limits. The court also found it significant that the trial court judge thought Auto-Owners' settlement offer was reasonable.

Finally, the court ruled that an insurer is not required to accept an offer of settlement, even if within the policy limits, if it believes in good faith that its insured is not liable. Otherwise, every trial which results in a verdict in excess of the insurer's policy limits "would, *ipso facto,* make the insurer liable for bad faith. Such is not the law in Minnesota."

## ISSUE

Did the trial court err in ruling that Auto-Owners was not guilty of bad faith for its acts in the settlement negotiations?

## ANALYSIS

The Minnesota Supreme Court held that an excess insurer is subrogated to the insured's rights against a primary insurer for breach of the primary insurer's *good-faith* duty to settle. *Continental Casualty Co. v. Reserve Insurance Co.,* 307 Minn. 5, 238 N.W.2d 862 (1976) (emphasis added). Therefore, Iowa National has a claim if Auto-Owners breached its duty of good faith to settle.

In Minnesota, a liability insurer may become liable in excess of its undertaking under the terms of the policy if it does not exercise "good faith" in considering offers to compromise the claim for an amount within the policy limits. *Short v. Dairyland Insurance Co.,* 334 N.W.2d 384, 387 (Minn.1983) (citations omitted).

The insurer's duty of good faith is breached where the insured is *clearly liable* and the insurer refuses to settle within the policy limits and the decision not to settle within the policy limits is not made in good faith and is not based upon

reasonable grounds to believe that the amount demanded is excessive.

*Id.* at 388 (emphasis added).

Twenty four years before *Short* was decided, the Minnesota Supreme Court said:

We are of the opinion that the insurance company could have validly declined the offer of settlement if good faith existed on either of two grounds. First, if it in good faith believed that its insured was not liable. Second, even if liability of its insured was certain, if it believed in good faith that a settlement at the proposed figure which it was required to contribute was greater than the amount the jury would award as damages.

*Boerger v. American General Insurance Co.*, 257 Minn. 72, 75, 100 N.W.2d 133, 135 (1959); *see also Coleman v. Holecek*, 542 F.2d. 532 (10th Cir.1976); *Betts v. Allstate Insurance Co.*, 154 Cal.App.3d 688, 201 Cal.Rptr. 528 (1984).

Appellant requests an extension of this principle. He urges us to hold a primary insurance company liable because of its failure to initiate and vigorously pursue settlement, regardless of its opinion as to potential liability. This argument is not persuasive.

■ Appellant does not claim that the case was improperly investigated or that an unreasonable trial strategy was used. Moreover, there was sufficient evidence in the record to support the trial court's findings of good faith in negotiation. As the trial court found, at no time did Iowa National offer to contribute toward settlement, nor did Rhodes' counsel ever make an offer within the policy limits. Moreover, liability was not clear. Therefore, there was no error.

■ The Minnesota Supreme Court is the appropriate forum to address a question regarding extension of existing law. There is currently no Minnesota law justifying the extension of the bad faith rule that Iowa National requests. We therefore affirm the trial court's ruling that Auto-Owner's settlement negotiations did not constitute bad faith under present law.

**DECISION**

We affirm the decision of the trial court.