NORTHFIELD INSURANCE
COMPANY, Respondent,

v.

ST. PAUL SURPLUS LINES INSUR-
ANCE COMPANY, A DIVISION OF the
ST. PAUL COMPANIES, INC., Appel-
lant.

No. C6–95–1738.

Court of Appeals of Minnesota.

March 26, 1996.

58

Gene P. Brádt, Wayne P. Dordell, Hansen, Dordell, Bradt, Odlaug & Bradt, P.L.L.P., St. Paul, for respondent.

Edward M. Laine, Bethany K. Culp, Oppenheimer, Wolff & Donnelly, St. Paul, for appellant.

Considered and decided by HARTEN, P.J., and HUSPENI and MANSUR,* JJ.

## OPINION

HARTEN, Judge.

Appellant St. Paul Surplus Lines Insurance Co. (St.Paul) issued a primary liability insurance policy with a limit of $1 million to Intertech Resources (Intertech), a manufacturer of medical products. Respondent Northfield Insurance Co. (Northfield) issued Intertech a $5 million excess liability insurance policy. In the instant action, Northfield sued St. Paul, alleging that St. Paul, while defending a products liability claim against Intertech, failed to exercise good faith in considering an offer to settle the claim within the limits of the primary insurance policy. After a bench trial, the district court found that St. Paul had breached its duty of good faith, and it awarded Northfield damages of $1.7 million, which represented the amount by which Intertech's liability exceeded the primary policy's $1 million limit. St. Paul now appeals from the adverse judgment. We reverse.

## FACTS

In May 1989, Roberta Rupp suffered a severe and permanent brain injury while hospitalized in Los Angeles, California. The injury resulted from Rupp's experiencing respiratory and cardiac arrest after hospital personnel failed to administer a scheduled dose of a drug prescribed by the attending physician. Rupp's conservator subsequently instituted a lawsuit in California against the hospital, the physician, and Intertech, which had manufactured a product used to resuscitate Rupp. The original claim against Intertech involved a part of the product that had fallen to the floor during the emergency;

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap- pointment pursuant to Minn. Const. art. VI, § 10.

however, when it became apparent that the part's absence could not have affected the product's performance, Rupp alleged additional theories of recovery against Intertech, including a failure to warn about proper use of the product.

The trial court denied Intertech's motion for summary judgment in June 1992, and thereafter St. Paul increased its reserve, which represented its determination of the suit's settlement value, to $150,000. By November 1992, Intertech had exceeded its retention amount under the policy, and St. Paul substituted Joseph McNeil as counsel for Intertech. On behalf of Intertech, McNeil rejected a $1 million settlement offer. McNeil reported to St. Paul that Intertech had little or no exposure to liability and that the case had no settlement value. Kathleen Long, a St. Paul claims supervisor, Carol Leonard, St. Paul's claims representative for the suit, and McNeil agreed with an earlier assessment made by Intertech's initial counsel that Intertech had a 75 to 90 percent chance of prevailing at trial on the question of liability. All parties agreed, however, that any damages awarded Rupp would likely exceed St. Paul's policy limit by several million dollars. McNeil advised the trial court that no amount would be paid to settle the claim against Intertech.

Northfield's exposure was monitored by Gretchen Willard, who received all relevant information concerning the suit up to the time of trial. Willard agreed with the assessment of Intertech's possible liability made by McNeil, Long, and Leonard.

The bifurcated jury trial began in California on March 22, 1993. Leonard had told Willard before trial that she would keep Willard informed of all relevant developments, including settlements with other defendants and changes in Rupp's settlement offer, and during the trial Leonard updated Willard by telephone several times. In fact, on April 12, 1993, Leonard told Willard that the trial was progressing favorably and that she would keep Willard informed. Later that day, Rupp settled the claim against the hospital for approximately $2.6 million. Immediately after this settlement was reached, David Harney, Rupp's attorney, indicated to McNeil and the physician's attorney that the claims against the two remaining defendants could be settled for $50,000 each. Both McNeil and the physician's attorney later testified that they believed that the $50,000 demand was an actual offer to settle.

McNeil conveyed the $50,000 settlement demand to Long and Leonard, but he was told that St. Paul would not offer any amount in settlement. Long later testified that she did not believe that the demand was a serious offer to settle at that amount. McNeil told Harney that Intertech would not offer any amount in settlement, and there were no further settlement negotiations. The physician, having been advised of the $50,000 offer, also declined to settle, and the liability phase of the trial continued without the hospital. St. Paul had not informed Intertech or Northfield of the settlement with the hospital or the $50,000 settlement offer.

At the conclusion of the liability phase of the trial, the case went to the jury, but the trial court did not submit the issue of the hospital's liability. On the question of liability, the jury found in favor of the physician, but it returned a verdict against Intertech, the sole remaining corporate defendant. Northfield was advised of the verdict, and at that time, it first learned about the settlement with the hospital. While the jury deliberated on the issue of damages, Northfield effected a settlement of the claim against Intertech for $2.7 million, of which St. Paul paid its policy limit of $1 million and Northfield paid $1.7 million. This settlement proved reasonable in light of the damage verdict returned by the jury immediately thereafter.

## ISSUES

1. Did the district court err in holding St. Paul liable for breach of its duty to exercise good faith in considering an offer to settle the claim against Intertech for an amount within the policy limits?

2. Was Northfield entitled to recover under its alternate theory that St. Paul breached a gratuitously assumed duty to keep Northfield informed of significant trial developments?

## ANALYSIS

■ 1. An excess liability insurer is subrogated to its insured's rights against the primary insurer for breach of the primary insurer's good faith duty to settle. *Iowa Nat'l Mut. Ins. Co. v. Auto–Owners Ins. Co.,* 371 N.W.2d 627, 628 (Minn.App.1985) (citing *Continental Casualty Co. v. Reserve Ins. Co.,* 307 Minn. 5, 8, 238 N.W.2d 862, 864 (1976)), *review denied* (Minn. Oct. 18, 1985). Consequently, Northfield was entitled to recover if St. Paul breached its duty to Intertech to act in good faith concerning settlement of the claim against Intertech.

■ Northfield's claim against St. Paul derives from the following rule: .

In Minnesota, a liability insurer, having assumed control of the right of settlement of claims against its insured, may become liable in excess of its undertaking under the terms of the policy if it fails to exercise "good faith" in considering offers to compromise the claim for an amount within the policy limits.

*Short v. Dairyland Ins. Co.,* 334 N.W.2d 384, 387 (Minn.1983). The insurer must view the situation as if no policy limits applied to the claim and "give equal consideration to the financial exposure of the insured." *Id.* at 387–88. The insurer's right to control settlement negotiations is subordinated to the purpose of the insurance contract—to defend and indemnify the insured. *Id.* at 387. The test is as follows:

The insurer's duty of good faith is breached in situations in which the insured is clearly liable and the insurer refuses to settle within the policy limits and the decision not to settle within the policy limits is not made in good faith and is not based upon reasonable grounds to believe that the amount demanded is excessive.

*Id.* at 388. Bad faith must be shown; a mere mistake in judgment by the insurer is not sufficient. *Peterson v. American Family Mut. Ins. Co.,* 280 Minn. 482, 486, 160 N.W.2d 541, 544 (1968).

■ The district court ruled that St. Paul breached its duty of good faith by failing to inform Intertech or Northfield of the $50,000 settlement offer and by refusing to grant McNeil any settlement authority following the offer. We do not disagree with the district court's conclusion that St. Paul acted in bad faith, which is supported by the following: St. Paul's failure to reassess Intertech's potential liability after the settlement with the hospital; its failure to give equal consideration to the interests of Intertech (and any subrogees) in considering the $50,000 settlement offer;[1] Long's rejection of the offer based solely on her dislike or distrust of Harney; St. Paul's $150,000 reserve for the case; and St. Paul's failure to advise Intertech or Northfield of the offer or the settlement with the hospital.[2]

Nevertheless, St. Paul argues that it cannot be held liable for a breach of its good faith duty because Intertech was not clearly liable here. We are compelled to agree.

Since 1926, the stated test in Minnesota has required that the insured be clearly liable before the insurer may suffer liability for breach of its duty of good faith. In the earliest reported Minnesota case on the issue, the supreme court stated:

*[W]here the insured is clearly liable* and the insurer refuses to make a settlement,

---

1. In light of our decision, we need not address St. Paul's argument that the district court impermissibly based its decision on excluded hearsay evidence regarding the existence of a valid $50,000 settlement offer. We note, however, that while evidence of Harney's statement was inadmissible to prove the matter asserted (i.e., that Rupp would actually settle for $50,000), such evidence could have been admitted to show that a "nuisance value" offer was on the table and to show that St. Paul understood that fact. It is these latter purposes that are relevant to whether St. Paul breached its duty of good faith; accordingly, the district court's conclusions were not deficient in this regard.

2. In continually noting that neither Northfield nor Intertech ever demanded that St. Paul settle within the policy limits, St. Paul ignores the fact that neither party received sufficient information. *See Lange v. Fidelity & Casualty Co.,* 290 Minn. 61, 67–68, 185 N.W.2d 881, 885–86 (1971) (although generally insured must have demanded that an offer be accepted, requirement does not apply where insured did not have sufficient advice from insurer concerning the implications of refusing offer).

thus protecting the insured from a possible judgment for damages in excess of the amount of the insurance, the refusal must be made in good faith and upon reasonable grounds for the belief that the amount required to effect a settlement is excessive.

*Mendota Elec. Co. v. New York Indem. Co.,* 169 Minn. 377, 380, 211 N.W. 317, 318–19 (1926) (emphasis added). The supreme court later restated the test as follows:

> We are of the opinion that the insurance company could have validly declined the offer of settlement *if good faith existed on either of two grounds. First, if it in good faith believed that its insured was not liable.* Second, even if liability of its insured was certain, if it believed in good faith that a settlement at the proposed figure which it was required to contribute was greater than the amount the jury would award as damages.

*Boerger v. American Gen. Ins. Co.,* 257 Minn. 72, 75, 100 N.W.2d 133, 135 (1959) (emphasis added). In *Short,* the supreme court adopted the following statement of the test:

> The *insurer's duty of good faith is breached in situations in which the insured is clearly liable and the insurer refuses to settle within the policy limits* and the decision not to settle within the policy limits is not made in good faith and is not based upon reasonable grounds to believe that the amount demanded is excessive.

334 N.W.2d at 388 (emphasis added). In our sole published case on this issue, we emphasized the words "clearly liable" in quoting the above statement of the test from *Short. Iowa Nat'l,* 371 N.W.2d at 628–29.

The supreme court has stated the following rationale for the "clearly liable" standard:

> It seems safe to say that it would be an unwholesome rule which would permit a liability insurer to be convicted of bad faith for having failed to compromise a personal injury action, justifiably believed by it to be without merit, if the plaintiff in the action should obtain a verdict and judgment against the insurer in excess of its policy liability. Such a rule would virtually have the effect of giving an insured under

a limited liability policy unlimited coverage.

*Larson v. Anchor Casualty Co.,* 249 Minn. 339, 350, 82 N.W.2d 376, 383 (1957) (quoting *Frank B. Connet Lumber Co. v. New Amsterdam Casualty Co.,* 236 F.2d 117, 127 (8th Cir.1956)). Moreover, Minnesota's appellate courts have consistently applied both prongs of the test—first, whether the insured was clearly liable, and second, whether the refusal to settle was in good faith—in determining whether an insurer has breached its duty to the insured. *See Short,* 334 N.W.2d at 388–89 (holding breach occurred where both prongs were satisfied); *Boerger,* 257 Minn. at 75–77, 100 N.W.2d at 135–37 (same); *Iowa Nat'l,* 371 N.W.2d at 629 (no breach where insurer acted in good faith and insured was not clearly liable). In no Minnesota case has a primary liability insurer been held liable to its insured or an excess insurer for breach of its good faith duty where the insured was not clearly liable in the underlying suit.

St. Paul therefore urges that the "clearly liable" standard be invoked here. There is no dispute that Intertech was not clearly liable; in fact, the parties and the district court appear to be in agreement that the verdict against Intertech was an aberration. The district court specifically stated that Intertech was not clearly liable. Under the *Boerger* test, St. Paul argues that its refusal to settle was valid because it "in good faith believed that its insured was not liable." *Boerger,* 257 Minn. at 75, 100 N.W.2d at 135.

This case, however, is more troubling than any of the other reported Minnesota cases involving an insurer's duty of good faith in considering settlement offers. In no other case was the differential between the rejected settlement offer and the eventual judgment so large; in no other case did the amount of the settlement offer constitute "nuisance value." In the event of such an offer, one might ask why an insurer should not be held liable for an excessive verdict if it acted in bad faith in refusing the offer, even if the non-liability of the insured appeared a foregone conclusion. At the same time, however, an insurer should not be forced to settle a frivolous claim. A more flexible test, by

which the likelihood of the insured's liability would be an important but not determinative factor, might therefore allow a more thorough analysis of all circumstances surrounding the offer and better address the problem that arises in cases such as the one before us.

Nevertheless, such considerations are more properly addressed to the supreme court. In *Iowa Nat'l*, the plaintiff never made a settlement offer within the policy limits, but the excess insurer argued that the primary insurer nevertheless should have effected such a settlement. 371 N.W.2d at 628–29. We noted that the excess insurer essentially sought a modification of the *Boerger* test:

> Appellant requests an extension of this principle. He urges us to hold a primary insurance company liable because of its failure to initiate and vigorously pursue settlement, regardless of its opinion as to potential liability.

*Id.* at 629. After concluding that the primary insurer had not acted in bad faith and that the insured's liability was not clear, we stated:

> The Minnesota Supreme Court is the appropriate forum to address a question regarding the extension of existing law. There is currently no Minnesota law justifying the extension of the bad faith rule that [the excess insurer] requests. We therefore affirm the trial court's ruling that [the primary insurer's] settlement negotiations did not constitute bad faith under present law.

*Id.*

■   Similarly here, we are bound to apply the law as it presently exists, and that law states that a primary insurer may not be held liable for breach of its duty of good faith if the insured was not clearly liable. Accordingly, we hold that the district court erred in awarding Northfield judgment against St. Paul.

Although it also found that St. Paul acted in bad faith in considering the $50,000 settlement offer, the district court stated:

The failure of St. Paul to advise Intertech and Northfield of the dramatically lowered settlement demand by Rupp in the California case is bad faith *per se*. On that basis alone, Northfield is entitled to judgment in its favor.

One might argue that the "clearly liable" standard applies only to an insurer's bad faith in refusing to settle, and that clear liability is therefore not required if the primary insurer's liability is based solely on a failure to communicate. Such argument must be rejected, however.

■   While the failure to communicate a settlement offer may be one factor in determining whether an insurer has breached its duty of good faith, it may not constitute a breach in itself. The supreme court has stated:

> In a determination of good faith, an *important question* is whether the insurer informed the insured of all proceedings, including communication of settlement offers.

*Short*, 334 N.W.2d at 389 (emphasis added, other emphasis deleted). In *Short*, the supreme court cited the insurer's failure in this regard merely as "[f]urther evidence" of a lack of good faith. *Id.* In *Larson*, the supreme court spoke of a "required duty" of informing the insured of settlement offers. 249 Minn. at 352, 82 N.W.2d at 385. Throughout *Larson* however, the court makes clear that the insured's right to recover derives from an insurer's refusal to settle. In fact, in *Norwood v. Travelers Ins. Co.*, 204 Minn. 595, 600, 284 N.W. 785, 787 (1939), the supreme court indicated that recovery may *not* be based solely on the insurer's failure to notify the insured of a settlement offer.

Accordingly, we also hold that the "clearly liable" requirement may not be circumvented in this fashion.

■   2. Alternatively, Northfield argues that St. Paul was liable for breaching a gratuitously assumed duty to Northfield to keep Northfield informed of all significant trial developments.[3] Northfield relies on

---

3.  St. Paul asserts that Northfield did not raise this issue before the district court. Although the district court failed to address fully this theory of

liability in its order and memorandum, Northfield did plead the breach of such a duty, and the

*Abresch v. Northwestern Bell Tel. Co.*, 246 Minn. 408, 75 N.W.2d 206 (1956), in which the supreme court, relying on the Restatement of Torts, held that a party that gratuitously assumes a duty and leads others to rely on its performance of that duty must exercise reasonable care in that performance. *Id.* at 414, 75 N.W.2d at 210 (citing Restatement (First) of Torts § 325 (1934)). The court stated that this tort applied to property damage and personal injury. *Id.* at 415, 75 N.W.2d at 211; *see also* Restatement (Second) of Torts § 323 (1965) (failure to exercise reasonable care in performance of gratuitously assumed duty may give rise to liability for resulting physical harm).

We conclude that Northfield may not recover under this theory. Application of the theory is inappropriate here because the instant case involved financial loss, not property damage or personal injury. Moreover, Northfield has essentially alleged negligence in pursuing this theory of recovery, but the supreme court has specifically rejected a negligence standard in favor of a bad faith standard. *See Larson*, 249 Minn. at 355–56, 82 N.W.2d at 386–87.

### DECISION

The district court specifically found that Intertech was not clearly liable in the underlying suit. Consequently, the district court erred in awarding Northfield judgment on its claim that St. Paul breached its duty to exercise good faith in considering offers to settle the claim against Intertech within its policy limits, even though St. Paul acted in bad faith in refusing to settle the claim for "nuisance value."

**Reversed.**

MANSUR, Judge (dissenting).

I respectfully dissent.

The majority insists that the cases establish a strict two-prong test requiring the insured's clear liability for determining bad faith liability. The cases cited by the majority, however, stress that each case must be decided on its own facts. The prevailing concern should be whether the insurer gave "equal consideration" to the interests of the insured (or any subrogee) in rejecting a settlement offer within the policy limits. Because I believe that the particular facts of this case, which reveal that St. Paul did not give equal consideration to the interests of Intertech and Northfield, warrant bad faith liability here, I would affirm the district court judgment in favor of Northfield.

Although some prior cases enunciate a test requiring clear liability, I do not believe that those courts intended to foreclose the possibility of liability in cases such as the one here, where there was a potential for millions of dollars in damages and an offer to settle for only $50,000. The implications of a strict "clear liability" requirement were not apparent in those other cases because they did not involve a refusal to settle for "nuisance value." In fact, any language purporting to require the insured's clear liability could almost be considered dicta, because in no case has such a standard been necessary to the outcome—i.e., in no Minnesota case, has an insurer acted in bad faith in considering a settlement, yet been relieved of liability to the insured or an excess insurer because the insured was not clearly liable in the underlying suit. Rather, every case turned on a consideration of all circumstances surrounding the insurer's refusal to settle.

For example, in *Peterson v. American Family Mut. Ins. Co.*, 280 Minn. 482, 160 N.W.2d 541 (1968), the supreme court held that no bad faith had been shown. The court stressed that the insurer had informed the insured of an offer to settle within the policy limits, but the insured insisted on going to trial. *Id.* at 486, 160 N.W.2d at 544.

Similarly, in *Larson v. Anchor Casualty Co.*, 249 Minn. 339, 82 N.W.2d 376 (1957), the insured was fully appraised of the potential for liability and of all settlement offers. The supreme court held that the insurer did not act in bad faith, but acted reasonably in taking the case to trial. *Id.* at 356, 82 N.W.2d at 387.

Again, in *Lawson & Nelson Sash & Door Co. v. Associated Indem. Corp.*, 204 Minn. 50, 282 N.W. 481 (1938), the supreme court held

issue was addressed by the parties at the summary judgment stage.

that the insurer was not liable for bad faith where the insured was fully informed of all facts pertinent to the case. *Id.* at 56, 282 N.W. at 483–84.

This court's opinion in *Iowa Nat'l Mut. Ins. Co. v. Auto–Owners Ins. Co.*, 371 N.W.2d 627 (Minn.App.1985), *review denied* (Minn. Oct. 18, 1985), is also distinguishable from the present case. In denying bad faith liability, we emphasized that the claim against the insured had been properly investigated, that the insurer's trial strategy had not been deficient, that the insurer had exercised good faith with respect to settlement negotiations, and that the insured had been kept fully informed. *Id.* at 628–29.

In the preceding cases, the insurer was absolved of bad faith liability because the totality of the circumstances indicated that the insurer did not act in bad faith. It is also important to note that in each case, the court specifically noted that the insured had been kept fully informed of all significant developments, including settlement offers.

The present case is distinguishable from those cases in which the insurer was relieved of liability. St. Paul's failure to inform Northfield and Intertech about the $50,000 offer is especially reprehensible. The district court also specifically found bad faith in St. Paul's reaction to the offer and its refusal to grant attorney McNeil any settlement authority. The court found:

> The testimony of Kathleen "Casey" Long is particularly damning. Despite the fact that defense counsel McNeil felt that the Rupp demand of $50,000 was genuine, Ms. Long, on behalf of St. Paul, refused to grant to him any settlement authority. Her reasons for not doing so had nothing to do with how the California case had been tried to that point, nor to any other relevant matter. Rather, her decision was predicated upon her clear, stated dislike and/or distrust of Rupp's attorney. Her action on behalf of St. Paul constituted a gross disregard of its insured's interest. It was a reckless, if not deliberate, failure to place the interests of Intertech with its own on an equal footing. In short, it was an act of bad faith.

In addition to this reaction to the offer and the failure to inform of the $50,000 offer, St. Paul's bad faith is demonstrated by its failure to inform Intertech or Northfield of the settlement with the hospital; its failure to reassess Intertech's potential liability after that settlement; and its refusal even to open negotiations with attorney Harney after the $50,000 offer in light of the potential damages and St. Paul's $150,000 reserve for the case. Even the majority concedes that St. Paul acted in bad faith. These facts show that St. Paul's actions went beyond a mere mistake in judgment. Proper consideration of all relevant facts leads to the conclusion that St. Paul should be liable for the excess portion of the judgment because it failed to give equal consideration to the interests of Intertech and any subrogees.

It is precisely facts such as those before us that demonstrate that public policy is not served by a strict adherence to a "clear liability" requirement in cases involving "nuisance value" settlement offers. It is self-evident that even a 99 percent likelihood of victory gives rise to a one percent chance of defeat; therefore, one could quite rationally argue that all cases have at least some settlement value, no matter how small. An insurer should be held liable if it truly acted in bad faith in rejecting a "nuisance value" settlement, even if it honestly believed it would win the suit against the insured. Under a strict "clearly liable" standard, an insurer could escape all liability, despite the most egregious conduct and a settlement offer of as low as $500, simply because the insured's liability was a 50–50 proposition. I will concede that insurers should not be *required* to settle all frivolous suits. But courts must at least have sufficient latitude in assessing an insurer's bad faith liability to base its decision on the totality of the circumstances.

The need for a broader test is more evident today than decades ago, when most of the reported cases on this issue were decided. A strict "clearly liable" standard does not comport with modern litigation, where settlement is more encouraged than in the past, and alternative forms of dispute resolution are emphasized and even mandated.

I do not believe, then, that prior precedent requires us to reverse here. The majority cites *Iowa Nat'l* in leaving this issue to the supreme court. In that case, the appellant sought to expand the scope of a primary insurer's bad faith liability to encompass a claim that the insurer failed to negotiate better and obtain a settlement within the policy limits. *Iowa Nat'l*, 371 N.W.2d at 629. In effect, the appellant there argued for a new basis for liability—the insurer there could not be held liable for bad faith in considering an offer to settle *within* the policy limits because it had never received such an offer—and the court of appeals correctly decided that it was the supreme court's role to create such liability. Northfield does not seek a similar extension here, for its claim is that St. Paul failed to exercise good faith in considering an offer within the policy limits. St. Paul's bad faith is clear here; therefore I would affirm.[1]

---

1. I agree with the majority that the district court's decision was not impermissibly based on hearsay. I would also reject St. Paul's argument that Northfield has failed to show causation here. The evidence admitted by the district court reasonably supports a conclusion that the plaintiff was willing to negotiate a settlement for a relatively small amount, and it is more probable than not that Northfield would not have sustained any loss had St. Paul seriously undertaken such negotiations. The district court's conclusion that Northfield suffered $1.7 million in damages "as a result of St. Paul's failure to exercise good faith" is not erroneous.