Paul HERGES, as Trustee for the Heirs of Clotilda Fleischhacker, Decedent, and as Assignee of the Claim of Clemens John Theis, Appellant,

v.

WESTERN CASUALTY AND SURETY COMPANY, a Foreign Corporation, Appellee.

No. 19231.

United States Court of Appeals
Eighth Circuit.

March 27, 1969.

Ronald R. Frauenshuh, of Weis, Frauenshuh & Narveson, Paynesville, Minn., for appellant.

Robert M. Austin, of Carroll, Cronan, Roth & Austin, Minneapolis, Minn., for appellee.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The issue on this appeal is whether the trial court erred in finding that the Western Casualty and Surety Company acted in good faith in refusing to settle a wrongful death action in state court against its insured within the limits of its insurance policy. Western restricted its offer to what it considered to be the "nuisance value" of the case, $1,000. The jury returned a verdict of $35,000.

The initial action arose out of an automobile accident in which Clotilda Fleischhacker, a mother of six minor children, was killed. The accident occurred on July 19, 1965, at 1:10 A.M., on County Road No. 12, in Stearns County, Minnesota, approximately one mile west of Richmond.

Western's insured, Clemens J. Theis, was driving his automobile along the county road when it collided with an automobile driven by the decedent. The decedent was entering the road from a narrow field road used as a shortcut between County Road No. 12 and State Highway No. 23.

Western received notice of the accident on the day that it occurred and caused an immediate investigation to be made. The investigation focused on Theis' neg-

ligence, the decedent's contributory negligence and the status of the field road.

The latter question was of importance because if the road was a private one, Theis had the right of way.[1] If the road was a public one, the question of right of way would become a fact question. Theis would then have the burden of showing conditions which would take the case out of the general rule that the person approaching an intersection from the right, in this case the decedent, has the directional right of way.[2]

Western's investigation disclosed the following:

(1) Theis had been drinking beer prior to the accident and may have also consumed hard liquor. His driving ability, however, remained unimpaired.

(2) The field road was located on private land and no public contribution had been made either for its construction or maintenance. The road was not designated or posted as a township, county or state highway.

(3) Theis knew that the public used the field road. He did not see the decedent's car until just before the front of his car collided with the left side of the decedent's car. The decedent's car was pushed about eighty-five feet to the east.[3]

(4) The decedent had an unobstructed view of approximately 700 to 800 feet in the direction from which Theis approached before entering the intersection.

Western concluded from its investigation that the field road was private, that its insured had the right of way and was free from negligence, and that the decedent was contributorily negligent. Western concedes, however, that its insured's negligence and the decedent's contributory negligence were jury issues. Western also recognizes that Minnesota statutory law creates a rebuttable presumption that the decedent was acting with due care.[4]

---

1. The Minnesota Statute provides:
   "*Subd. 4. Entering highway from private driveway:* The driver of a vehicle entering or crossing a highway from a private road or driveway shall yield the right of way to all vehicles approaching on such highway."
   M.S.A. § 169.20, Subd. 4.

2. The Minnesota Statute provides:
   "*169.20 Right of way*
   "*Subdivision 1. Approaching uncontrolled intersection.* When two vehicles enter an uncontrolled intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.
   "The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder.
   "The foregoing rules are modified at through highways, and otherwise as hereinafter stated in this section."
   M.S.A. § 169.20, Subd. 1.
   The fact that one of the roads was a well traveled paved road and the other a lightly traveled gravel one does not, under Minnesota law, take the case out of the general rule. See, Wilmes v. Mihelich, 223 Minn. 139, 25 N.W.2d 833 (1947).

3. The court viewed this evidence as being sufficient to justify submitting the issue of Theis' speed to the jury.

4. "*602.04 Presumption of due care, negligence actions*
   "In any action to recover damages for negligently causing the death of a person, it shall be presumed that any person whose death resulted from the occurrence giving rise to the action was, at the time of the commission of the alleged negligent act or acts, in the exercise of due care for his own safety. The jury shall be instructed of the existence of such presumption, and shall determine whether the presumption is rebutted by the evidence in the action. Laws 1957, c. 949, § 1."
   M.S.A. § 602.04.
   The statute creates more than a procedure presumption in that the jury must be instructed as to the existence of the presumption, therefore, allowing the jury to determine whether the presumption has been rebutted. As the Minnesota Court recently observed:
   "The complicating effect of this statute is to permit the jury to find a decedent free of negligence by force of the presumption despite evidence which would

Theis was injured in the accident and his car was damaged. He retained counsel to bring an action on his behalf. The decedent's insurer settled Theis' personal injury claim for $4,500. It also paid Western, as subrogee of Theis, seventy-five per cent of the damage to Theis' car.

Plaintiff, the decedent's representative, subsequently sued Western's insured for $35,000, the maximum permissible under the Minnesota Wrongful Death Statute. M.S.A. § 573.02, Subd. 1. Early in the pretrial proceedings, he offered to settle for $20,000. This offer was subsequently reduced to $10,-000 and then to $9,000. Western rejected each settlement offer. It proposed to settle the claim for $1,000, the "nuisance value" of the case. It refused to make further offers. The $9,000 offer was orally communicated to Theis.

On June 7, 1966, the first day of trial, Western prepared a written statement which they asked Theis to sign. It recited that the insured understood that the insurance policy only protected him up to $10,000, that the amount sued for exceeded that sum, and that the insured had a right to engage lawyers at his own expense if he desired. Theis signed the statement and indicated that he did not wish to engage independent counsel. He also stated that he did not believe that he was responsible for the decedent's death. Western retained this signed letter for its files. This was the first time that Western had advised Theis of his rights.

Initially, Western believed that the field road would be held to be a private road as a matter of law. During the early stages of the trial, however, the owner of the land on which the field road was located testified that while he considered the road to be a private one, it had been used by the public with his acquiescence for more than twelve years. This testimony was admittedly sufficient to justify the state district court in submitting the issue of whether the road was public or private to the jury. Western did not change its offer as a result of this testimony.

The jury returned a verdict of $35,000. Western acknowledges that the size of the verdict was not unexpected in the light of the decedent's age and family responsibility. No appeal was taken to the Minnesota Supreme Court as Western was advised by its counsel that the disputed issues were factual ones.

Western partially satisfied the judgment by paying the decedent's representatives $10,000, the limit of its liability as to one person under the policy issued

---

support a finding that decedent's negligence contributed to cause his death."
Schwalich v. Guenther, Minn., 166 N.W. 2d 74, Feb. 28, 1969.

In addition, the statute has an effect upon how the jury views the defendant's actions. As pointed out by Justice Sheran in his dissenting opinion in Lustik v. Rankila, 269 Minn. 515, 131 N.W.2d 741 (1964):

" * * * [T]he statutory presumption of due care does not relate exclusively to the issue of the decedent's negligence. It does so in form, but not in substance or practical effect.

"An instruction which permits a jury to presume due care on the part of one automobile driver, even though the evidence in the absence of such presumption would compel a finding of negligence, necessarily affects the jury's evaluation of the other driver's conduct. If a two-car collision is due to the fault

of one or the other or both of the drivers, the process which eliminates the conduct of one as causative inevitably casts responsibility on the other. An intersection collision, for example, may occur because one driver or the other failed to yield the right-of-way. If the jury is free to presume that a deceased driver had the right-of-way regardless of the evidence, it is bound to find that the other failed to yield. A head-on collision, as another instance, may occur because one driver or the other or both crossed the centerline. The statutory presumption may result in a jury finding that the decedent was in his own lane of travel at impact. If so, it must find the defendant driver to have been in the wrong lane to account for the accident. Thus, the residual effect of the presumption is to influence decision as to the negligence of both drivers."
Id. at 750.

to Theis. Theis subsequently assigned to plaintiff his rights against the insurer. The consideration for the assignment was an agreement to refrain from garnishing Theis' wages or initiating any proceeding to collect the balance of the judgment against him. Plaintiff also agreed to refrain from taking any steps to have Theis' driving license revoked by reason of the unpaid automobile personal injury judgment standing against him.

On August 10, 1966, Theis filed a voluntary petition in bankruptcy. He was discharged on March 6, 1967.

■ The plaintiff commenced an action against Western for $25,000, the difference between the amount of the verdict and the partial satisfaction of the judgment. The case was tried by the court without a jury. The court properly considered the question as being one of Minnesota law. In correctly holding that the test of Western's liability was one of good faith,[5] the court quoted from Larson v. Anchor Casualty Co., 249 Minn. 339, 340, 82 N.W.2d 376, 378 (1957):

> "The rule in this state is that a liability insurer, having assumed control of the right of settlement of claims against the insured under a policy which gives it the exclusive right to defend and settle, may become liable in excess of its undertaking under the policy provisions if it fails to exercise 'good faith' in considering offers to compromise the claim for an amount within the policy limits; there must be bad faith on the part of the insurer with resulting injury to the insured before there can be a cause of action against the insurer for the excess over its undertaking." [6]

---

5. The rule that the insurer must exercise "good faith" in considering settlement offers is widely recognized. For collection of cases, see Annot., 40 A.L.R.2d 168. But proposals have been made that the "good faith" rule be abandoned and that a doctrine of strict liability be applied. Such a rule was discussed in dicta in Crisci v. Security Insurance Co. of New Haven, Conn., 66 Cal.2d 425, 58 Cal. Rptr. 13, 17, 426 P.2d 173, 177 (1967). There, the court stated:

> "The proposed rule is a simple one to apply and avoids the burdens of a determination whether a settlement offer within the policy limits was reasonable. The proposed rule would also eliminate the danger that an insurer, faced with a settlement offer at or near the policy limits, will reject it and gamble with the insured's money to further its own interests. Moreover, it is not entirely clear that the proposed rule would place a burden on insurers substantially greater than that which is present under existing law. The size of the judgment recovered in the personal injury action when it exceeds the policy limits, although not conclusive, furnishes an inference that the value of the claim is the equivalent of the amount of the judgment and that acceptance of an offer within those limits was the most reasonable method of dealing with the claim.
> "Finally, and most importantly, there is more than a small amount of elementary justice in a rule that would require that, in this situation where the insurer's and insured's interests necessarily conflict, the insurer, which may reap the benefits of its determination not to settle, should also suffer the detriments of its decision. On the basis of these and other considerations, a number of commentators have urged that the insurer should be liable for any resulting judgment where it refuses to settle within the policy limits. * * * "

Reaction to the court's comments have been varied. See, Snyder, Defense in Excess of Policy Limit Litigation, 18 Federation of Insurance Counsel Quarterly 9 (1968); Comment, 47 Neb.L.Rev. 705 (1968); Comment, 42 St. John's L.Rev. 544 (1968); Comment, 43 Wash.L.Rev. 799 (1968). See also, Note, 18 Stan.L. Rev. 475, 482–484 (1966); Note, 60 Yale L.J. 1037, 1041–1042 (1951); Comment, 48 Mich.L.Rev. 95, 102 (1949); Note, 13 U.Chi.L.Rev. 105, 109 (1945).

The Minnesota Supreme Court has shown no inclination that it is ready to adopt a rule of strict liability. Indeed, since *Crisci*, the Minnesota Supreme Court has reaffirmed its position that "good faith" is still the rule to be applied. Peterson v. American Family Mutual Insurance Co., 280 Minn. 482, 160 N.W.2d 541 (1968).

6. Peterson v. American Family Mutual Insurance Co., supra; Boerger v. American General Insurance Co. of Minn., 257

The court found that the plaintiff had not sustained its burden of proving that Western had failed to act in good faith. It found that Western had made a prompt and complete investigation, that it had advised Theis of the $9,000 settlement offer, that it had informed Theis of the limits of his policy over $10,000 and that Western had not exercised bad faith in the handling of settlement negotiations. It further found that the case had been competently tried.

The plaintiff contends on appeal that Western breached its obligation of good faith representation by: (1) failing to conduct a complete investigation of the accident; (2) failing to advise the insured prior to the commencement of trial that the insured had a right to private counsel and failing to encourage the insured to retain such counsel; (3) failing to give timely notice of the insurer's adverse interest and the danger of an excess judgment; and (4) failing to inform the insured in a meaningful manner of settlement offers and to properly consider the interest of the insured when reaching a decision on them.

■ ■  The record adequately supports the court's finding that the case was competently investigated and tried. The record also supports the court's specific findings that Western communicated the $9,000 settlement offer to Theis, that it advised him that the amount sued for exceeded his insurance coverage, and that he had a right to engage counsel at his own expense if he desired. There is less in the record to support the court's implicit findings that the notices were timely and meaningful. Western erred in waiting until the morning of trial to communicate with Theis. It further erred in failing to advise Theis in detail as to the implications of an excess verdict.[7]

We do not believe, however, that these failures would, standing alone, be sufficient to justify a reversal.

The more difficult question is whether Western's adamant position that the case had only a "nuisance value" was compatible with its obligation of "good faith." The District Court answered in the affirmative. It commented:

" * * * It may well be that the settlement of decedent's insurer of Theis'

---

Minn. 72, 100 N.W.2d 133 (1959); Larson v. Anchor Casualty Company, 249 Minn. 339, 82 N.W.2d 376 (1957); Norwood v. Travelers Ins. Co., 204 Minn. 595, 284 N.W. 785, 131 A.L.R. 1496 (1939); Lawson & Nelson S. & D. Co. v. Associated Indem. Corp., 204 Minn. 50, 282 N.W. 481 (1938); Mendota Electric Co. v. New York Indemnity Co., 175 Minn. 181, 221 N.W. 61 (1928); Mendota Electric Co. v. New York Indemnity Co., 169 Minn. 377, 211 N.W. 317 (1926).

In *Mendota* and *Lawson*, the insurers made substantial offers. In *Larson*, no settlement offer was made by the insurer but the record indicated that the probabilities of a verdict against its insured were minimal. In *Peterson*, the insured insisted that the insurer try the case because he felt that he was entirely without fault for the accident. And, in *Norwood*, the court found that the insurer's failure to communicate the settlement offers had not injured the insured.

7. The company's duty to exercise "good faith" in representing the insured includes the obligation to inform the insured of its

potential adverse interest. See, Perkoski v. Wilson, 371 Pa. 553, 92 A.2d 189 (1952); Murach v. Mass. Bonding and Ins. Co., 339 Mass. 184, 158 N.E.2d 338 (1959). The customary procedure is to send an excess judgment letter as soon as the suit is initiated which notifies the insured that the claim is for an amount in excess of policy limits and that the insured may employ his own attorney at his own expense to represent the insured's personal interest. But, it is questionable whether these warnings clearly point out to an inexperienced insured that a conflict exists with respect to the advisability of settlement. Because of this danger, commentators have recommended that the defense counsel hold a frank discussion with the insured pointing out the conflict and, in appropriate cases, suggesting that independent counsel be retained. See, Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L. Rev. 1136, 1167–73 (1964); Locke and Austin, Handling the Excess Coverage Situation for the Insurer, 36 Ins. Counsel J. 60, 64–67 (1969).

claim and Western's subrogated claim caused defendant Western to take ·too lightly the potential hazards in the Trustee's action * * *. Where there are six minor children bereft of the care and comfort of a young mother, the damages could well reach the maximum if the case reaches the jury. * * * [B]efore the trial ended, [however,] there should have been a realization * * * that there was considerable evidence as to the use of this field road by the public for years and that in view thereof the Court considered that whether this was a public or private road was a question for the jury. It may be argued with some force that these facts, coupled with the statutory presumption of due care * * *, should have alerted the insurer to the probabilities of a favorable outcome for the plaintiff Trustee. In addition, it may be argued that confronted with a $9,000 settlement offer and with a $10,000 limitation on its liability in the death case, defendant had comparatively little to lose if the jury's verdict went against it. Theis was a man of little means and had no assets which could be reached except a small hourly wage as a laborer. But notwithstanding that one may conclude in the retrospect that better judgment on the part of defendant's counsel should have demonstrated to them that this was a case that should have been settled for more than $1,000, the Court cannot on this record find that defendant failed to act in good faith in taking the position that it did in the settlement negotiations.

\* \* \* \* \* \*

" * * * [T]he Court concludes that although there is evidence which may justify a finding that the insurer and its counsel should have been more cognizant of the potential hazards to the insured in the death action of a verdict in excess of the $9,000 settlement offer, this Court is clear that the plaintiff has wholly failed to establish that any * * * lack of good faith corrupted the defendant's representation of Theis in its investigation of the Fleischhacker claim or in the consideration of settlement offers by the Trustee, or in the conduct of that trial or otherwise. Even unwarranted optimism as to what a jury might do under the evidence in the death action herein cannot be translated into a finding of bad faith, and singularly the insured, Theis, the assignor of plaintiff's claim herein, clings to the view that he was free from fault and that the jury's verdict was wrong. * * * "

We are left with the definite and firm conviction that a mistake has been made and that the trial court's decision must be reversed. See, United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Nee v. Main Street Bank, 174 F.2d 425, 428 (8th Cir.), cert. denied, 338 U.S. 823, 70 S.Ct. 69, 94 L.Ed. 500 (1949).

The trial court apparently adopted the view urged by Western that the insurer had a right to refuse to offer more than the "nuisance value" of the case because it believed that its insured had a defense to the claim. While language in Boerger v. American General Insurance Co. of Minn., 257 Minn. 72, 100 N.W.2d 133 (1959), can be read as supporting this view, the holding in the case itself cannot.[8]

■ We believe that the Minnesota court would follow the rule that a "good

---

8. The court said:
"We are of the opinion that the insurance company could have validly declined the offer of settlement if good faith existed on either one of two grounds. First, if it in good faith believed that its insured was not liable. Second, even if liability of its insured was certain, if it believed in good faith that a settlement at the proposed figure which it was required to contribute was greater than the amount the jury would award as damages. * * * "
Boerger v. American General Insurance Co. of Minn., 100 N.W.2d at 135.
Although the court statement could be read as creating an entirely subjective standard of good faith, the actual dis-

**1164**

faith" belief entails more than the construction of a possible defense to an action. It requires that the defense be evaluated in terms of the reasonable expectations that that defense will prevail and amount of the verdict if it does not.[9] The settlement offers must then be viewed in light of those expectations, with equal consideration being given to the financial exposure of both the insured and the insurer.

Although the standard of "equal consideration" is easily enunciated, its application to a particular case is not as easily performed. Professor Keeton, in Liability Insurance and Responsibility for Settlement, 67 Harv.L.Rev. 1136, 1146–1148, discussed the problem and made the following proposals:

" * * * [T]he duty of the company involves two distinct aspects—first, whether company must give equal consideration (or more or less weight) to insured's interests, and second, whether insurer must exercise only good faith or ordinary care as well. * * * At the final point of decision to litigate or to settle, one or the other of these conflicting interests is sacrificed. Is it not a natural reaction to suppose that the interest which was sacrificed was not given *equal* consideration? This is obviously not the meaning of the rule, for if it were there would be no case of equal consideration (unless interests of company and insured did not conflict) but only cases of paramount consideration to insured's interests and other cases of paramount consideration to company's interests. The equality referred to is not equal weight in determination of the choice, but equality in consideration—that is, consideration of each portion of the total risk without regard to who is bearing that portion of the risk. * * *

\* \* \* \* \* \*

"In jurisdictions applying the 'bad faith rule,' the combination of the 'equal consideration' and 'bad faith' aspects of the standard may be stated in the following form:

"With respect to the decision whether to settle or try the case, the insurance company must in good faith view the situation as it would if there were no policy limit applicable to the claim." (Footnotes omitted.)

We feel Professor Keeton's no policy limit approach is a sound one and is not in conflict with the decided Minnesota cases.[10]

The question then is whether Western would have taken the same position— that the case was worth only $1,000— had it been potentially responsible for the whole $35,000. We think not.

■ It was apparent from the start of the lawsuit that the question of negligence and contributory negligence were jury issues and that the possibility of an adverse finding was substantial, particularly in view of the fact that the decedent had the benefit of the presumption of due care. At trial, it became apparent that the public or private nature of the road was also a jury issue. On the basis of these factors, it is clear that there was a strong possibility that the jury would decide the issue of liability adversely to the insured. When

position of the case indicates otherwise. In sustaining the lower court's finding of "bad faith," the court not only looked at the insurer's records concerning the case, but also made its own assessment of the case. The court reviewed the evidence surrounding the accident and concluded that in view of the high degree of care owed by the insured, these circumstances did not constitute reasonable grounds for rejecting settlement offers.

9. Potomac Insurance Company v. Wilkins Company, 376 F.2d 425 (10th Cir. 1967).

See, State Farm Mutual Automobile Insurance Co. v. Smoot, 381 F.2d 331 (5th Cir. 1967).

10. See, Bell v. Commercial Insurance Co. of Newark, N. J., 280 F.2d 514 (3d Cir. 1960); General Accident Fire & Life Assur. Corp. v. Little, 103 Ariz. 435, 443 P.2d 690 (1968); American Fidelity & Cas. Co. v. L. C. Jones Trucking Co., Okl., 321 P.2d 685 (1957); Davy v. Public National Insurance Company, 181 Cal.App.2d 387, 5 Cal.Rptr. 488 (1960).

we add the probability that any verdict would approach the maximum permitted under the Minnesota Wrongful Death Statute, the case was clearly one calling for serious negotiations within the policy limits. There clearly were no such negotiations. Compare, State Farm Mutual Automobile Insurance Co. v. Jackson, 346 F.2d 484, 489 (8th Cir. 1965); Frank B. Connet Lumber Co. v. New Amsterdam Cas. Co., 236 F.2d 117 (8th Cir. 1956); Maryland Casualty Co. v. Cook-O'Brien Const. Co., 69 F.2d 462 (8th Cir.), cert. denied, 293 U.S. 569, 55 S.Ct. 81, 79 L.Ed. 668 (1934).

Reversed. Judgment to be entered in the amount of $25,000.