**CARGILL, INCORPORATED, on behalf of itself and as assignee and subrogee of Leprino Foods Company, Plaintiff,**

v.

**RON BURGE TRUCKING, INC., and National Interstate Insurance Corp., Defendants.**

**Civ. No. 11–2394 (PAM/JJK).**

United States District Court, D. Minnesota.

June 1, 2012.

Andrew J. Sveen, Benjamin J. Rolf, Cynthia P. Arends, Nilan Johnson Lewis PA, Mpls, MN, for Plaintiff.

Mark A. Pilney, Reding & Pilney, PLLP, Andrew R. Brown, Reding & Pilney, Lake Elmo, MN, Brian A. Wood, Christopher L. Goodman, Lind Jensen Sullivan & Peterson, PA, Mpls, MN, for Defendants.

## ORDER

JEFFREY J. KEYES, United States Magistrate Judge.

This matter is before the Court on Plaintiff Cargill, Incorporated's ("Cargill"), Motion to Compel Discovery Responses. (Doc. No. 56.) In its motion, Cargill asks the Court (1) to order Defendant National Interstate Insurance Corp. ("National Interstate") to provide complete responses to all Cargill's interrogatories and requests for production of documents, (2) to deem all National Interstate's objections to Cargill's discovery (including privilege and work-product objections) waived, and (3) to require National Interstate to pay Cargill's reasonable attorney's fees and expenses incurred in bringing the motion to compel. (*Id.*) On May 23, 2012, the Court held a hearing on the motion and counsel

appeared on behalf of both Cargill and National Interstate. (Doc. No. 66.)

Based on the file, and all the records and proceedings in this action, and on the arguments of counsel, **IT IS HEREBY ORDERED** that:

1. Cargill's Motion to Compel Discovery Responses (Doc. No. 56), is **GRANTED** as set forth in the accompanying Memorandum, which is incorporated in this Order by reference, and as follows:

    a. National Interstate has waived its objections to the discovery requests at issue, including those based on attorney-client privilege and the work-product doctrine;

    b. On or before June 15, 2012, National Interstate must provide revised responses to the discovery requests at issue, removing all objections and otherwise complying with the Court's instructions set forth in the accompanying Memorandum;

    c. On or before June 6, 2012, Cargill shall submit an affidavit and any other support showing the amount of the reasonable expenses incurred in bringing this motion to compel. On or before June 11, 2012, National Interstate may file a letter brief of no more than two (2) pages in response to Cargill's submission; and

    d. When the Court receives the submissions discussed in subparagraph c above, the Court will issue a separate Order awarding Cargill its reasonable fees and costs incurred in making its motion to compel.

## *MEMORANDUM*

### I. BACKGROUND

Cargill and Defendant Ron Burge Trucking, Inc. ("Burge Trucking"), entered into an agreement for the transport of certain Cargill products. Under that agreement, Burge Trucking hauled a load of food-grade salt from Cargill's Akron, Ohio, location to Cargill's customer, Leprino Foods Company ("Leprino"). Cargill claims that Burge Trucking failed to clean its trailer and the salt was contaminated by Burge Trucking's previous load of roofing aggregate. The contamination was apparently not discovered, and Leprino used the salt to produce nearly a million pounds of mozzarella cheese. Leprino submitted a claim to Cargill for $2.4 million in losses attributable to the allegedly contaminated salt.

Under the agreement between Cargill and Burge Trucking, Burge Trucking was required to add Cargill to its insurance policy as an additional insured, and Burge Trucking complied with that obligation by purchasing an insurance policy through National Interstate. Cargill and Burge Trucking both informed National Interstate about the incident described above and the potential exposure they faced. National Interstate hired a law firm to investigate and defend both Burge Trucking and Cargill, a fact that Cargill contends created an improper conflict of interests.

Cargill settled Leprino's claim against it for $1.6 million following what it claims was National Interstate's alleged refusal to negotiate with Leprino in good faith. Cargill then brought this action on its own behalf and as subrogee for Leprino against Burge Trucking and National Interstate, asserting several causes of action, including bad faith denial of insurance benefits.[1]

The discovery dispute at issue in Cargill's motion began earlier this year. On January 13, 2012, Cargill served interrogatories and requests for production of documents on National Interstate under Rules 33 and 34 of the Federal Rules of Civil Procedure. (Doc. No. 58, Benjamin J. Rolf's Decl. in Supp. of Mot. to Compel Discovery Responses ("Rolf Decl.") ¶¶ 2–3, Exs. A & B.) Cargill did not receive responses from National Interstate, and on March 28, 2012, Cargill sent a letter to National Interstate to confer regarding the overdue discovery responses. (Rolf Decl. ¶ 5, Ex. C.) Cargill informed National Interstate that it considered National Interstate's objections to the discovery requests waived and demanded responses to those requests.

---

**1.** United States District Court Judge Paul A. Magnuson recently denied National Interstate's motion for summary judgment (Doc. No. 63). In his Order denying that motion, Judge Magnuson discusses the factual allegations in this action in more detail.

(*Id.*) Cargill also told National Interstate that Cargill would be forced to bring a motion to compel if National Interstate failed to respond. (*Id.*) On May 9, 2012, Cargill brought this motion. As of that date, National Interstate had not served responses or objections to Cargill's discovery requests. (Rolf Decl. 58 ¶ 5.)

In its motion, Cargill "seeks full responses [to all its discovery requests] in 14 days [from the date the Court rules on its motion] and its reasonable attorneys' fees and expenses" incurred in bringing its motion. (Doc. No. 56.) Cargill also asks the Court to prohibit National Interstate from raising *any* objection to Cargill's discovery requests. (*See* Cargill's Proposed Order, provided to the undersigned via email (proposing that National Interstate "must fully respond to Cargill's discovery requests, without objection within 14 days of the date of this order").)

National Interstate opposes Cargill's motion. It contends that the motion is moot because it has now served responses to Cargill's discovery requests. (Doc. No. 64, Def. Nat'l Interstate Ins. Corp.'s Mem. of Law in Opp'n to Pl.'s Mot. to Compel Discovery Resp. ("Nat'l Interstate's Mem.") at 1; Doc. No. 65, Aff. of Christopher L. Goodman ("Goodman Aff.") ¶¶ 2–3, Exs. A & B.) National Interstate also argues that its delay in responding to the discovery has not prejudiced Cargill, that Cargill already had information responsive to its discovery requests from documents produced with National Interstate's initial disclosures, and that sanctions are inappropriate because National Interstate's failure to respond was substantially justified. (Nat'l Interstate's Mem. at 2–4.)

## II. DISCUSSION

### A. National Interstate has Waived its Objections

#### 1. Waiver of Objections under Rules 33 and 34

The primary issue on this motion concerns National Interstate's waiver of its objections to Cargill's discovery. Cargill contends that National Interstate has waived all of its objections to Cargill's discovery requests. Car-

gill asks the Court to strike those objections and order National Interstate to serve revised discovery responses.

"The party upon whom the interrogatories have been served shall serve a copy of the answers and objections if any within 30 days after the service of the interrogatories." Fed.R.Civ.P. 33(b)(2). "All grounds for an objection to an interrogatory shall be stated with specificity. Any ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown." Fed.R.Civ.P. 33(b)(4). Several courts have concluded that this provision means "[a] party who fails to file timely objections waives all objections, including those based on privilege or work product." *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409 (C.D.Cal.2005) (citing cases).

Although Rule 34 does not contain an automatic waiver provision for untimely objections as does Rule 33(b)(4), "courts have reasoned that Rule 33(b)(4) type waiver should be implied into all rules involving the use of the various discovery mechanisms." *Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 238 F.R.D. 536, 538 (D.Conn.2006) (citing *Byrd v. Reno*, No. 96–2375(CKK)(JMF), 1998 WL 429676, at *6 (D.D.C. Feb. 12, 1998); *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 661 (D.Colo.2000); and *Deal v. Lutheran Hosp. & Homes*, 127 F.R.D. 166, 168 (D.Alaska 1989)). This Court agrees that the same waiver provision found in Rule 33(b)(4) applies to document requests under Rule 34. *See Deal*, 127 F.R.D. at 168 (concluding that "on principle, except to avoid manifest injustice, procedures under Rule 45(d)(1) and under Rules 33, 34, and 36 should be similar, if not identical"); *Byrd*, 1998 WL 429676, at *4 (concluding that there is "no reason to give [Rule 34] a dissimilar interpretation" than that given to Rule 33(b)(4)).

■ There is no legitimate dispute here that National Interstate failed to comply with its obligations to timely respond or object to discovery. That failure to timely respond or object operates as a waiver of National Interstate's discovery objections. The Court, in its discretion, can only excuse that waiver for good cause. *See Blumenthal v. Drudge*, 186

F.R.D. 236, 240 (D.D.C.1999) (discussing how the failure to object may, in the trial court's discretion, be excused under Rule 33(b)(4) and that the same principle applies to document requests under Rule 34).

## 2. Discretion and "Good Cause"

The automatic waiver provision did not become part of Rule 33 until the 1993 amendments to the Federal Rules. But even before the provision became part of the Rule, courts exercised their discretion when considering whether a party waived its objections due to untimely filing of discovery responses. For example, in *Bohlin v. Brass Rail, Inc.*, 20 F.R.D. 224, 225–26 (S.D.N.Y. 1957), the court apparently considered certain work-product protected materials to be too important to disclose to an opponent. *Id.* (noting that the court was "not prepared . . . to hold that the failure to file objections to interrogatories constitutes a waiver" of any privilege the plaintiff may have had in his own physician's reports or as to witness statements obtained by his counsel in the course of preparation for trial). Courts taking this approach considered whether enforcing the waiver "would cast an undue burden on [the responding party] or otherwise would be contrary to the interests of justice." *Baxter v. Vick*, 25 F.R.D. 229, 233 (E.D.Pa.1960) (citing *Cleminshaw v. Beech Aircraft Corp.*, 21 F.R.D. 300, 301 (D.Del.1957), and *Bohlin*, 20 F.R.D. at 225).

That focus on the effects of the putative waiver, however, was not present in *Cardox Corp. v. Olin Mathieson Chem. Corp.*, 23 F.R.D. 27, 31 (S.D.Ill.1958). Instead, the court looked to the responding party's failure to comply with the rule and the reason it made no response. *Id.* There, the responding party unilaterally decided the request at issue was objectionable and failed to follow the then existing procedure for objecting to an interrogatory. *Id.* (discussing the 15–day deadline for responses and the 10–day deadline for filing objections along with a notice of hearing found in the pre–1970 version of Rule 33).

More recent decisions concerning waiver of objections also reflect a broad exercise of judicial discretion. Courts have found objections waived, including those based on attorney-client privilege and the work-product protection, where a party serves no response at all for a lengthy time after a response is due, where the party fails to provide a privilege log, and where the nature of the information requested suggests that an objection would normally be made. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.1992) (stating that "a failure to object to discovery requests within the time required constitutes waiver of any objection"); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981) (finding that untimely service of responses to interrogatories waives objections where no response or objection at all was provided); *see also Horace Mann Ins. Co.*, 238 F.R.D. at 538 (holding an untimely assertion of attorney-client privilege was waived when asserted twenty-two days late, without a privilege log, and where the dispute by its very nature involved communications between battling insurance companies and their lawyers); *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 661–62 (D.Colo.2000) (finding a claim of privilege waived where the defendant failed to file objections to interrogatories until 71 days after the interrogatories were served); *Smith v. Conway Org., Inc.*, 154 F.R.D. 73, 76 (S.D.N.Y.1994) (deeming waived a work-product objection asserted nearly four months after the document request was served).

But not all recent decisions have found objections waived where a party failed to assert them in a timely manner. One court excused a party's failure to make timely objections where the responding party filed responses and objections shortly after the date they came due, and where its opponent did not challenge the merits of those objections. *See Blumenthal*, 186 F.R.D. at 240 ("[I]n the exercise of its broad discretion, the Court finds that plaintiffs have not waived their right to raise their objections even at this late date. With the exception of plaintiffs' claims of privilege . . . defendant has not challenged the merits of any of plaintiffs' objections[.]"). Another court excused a party's failure to file timely objections where an "administrative error" caused the delay, the

responding party worked immediately to prepare responses when it discovered the error, and the delay lasted approximately one month. *McKissick v. Three Deer Ass'n Ltd. P'ship,* 265 F.R.D. 55, 57 (D.Conn.2010).

All of these cases reflect the breadth of the Court's discretion in determining whether to excuse a party's waiver. They also reflect that the term "good cause" for excusing waiver can be construed in more than one way depending on the circumstances in a given case. Some courts interpret "good cause" to require the responding party to show diligence; a waiver will be excused where the party can show that " 'despite due diligence it could not have reasonably met the scheduled deadlines.' " *Starlight Int'l, Inc. v. Herlihy,* 181 F.R.D. 494, 496–97 (D.Kan.1998) (quoting *Broitman v. Kirkland,* 86 F.3d 172, 175 (10th Cir.1996)). Other courts appear to find good cause to excuse waiver by considering the impact that the waiver of the objection at issue will have on the litigation, whether there was some intent to delay or mislead the requesting party in the failure to answer, and other factors. *See McKissick,* 265 F.R.D. at 57; *Blumenthal,* 186 F.R.D. at 240. In particular, courts considering whether to exclude a waiver regarding privilege or work-product protections engage in this multifactorial inquiry because " 'waiver of privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith.' " *Ayers v. Cont'l Cas. Co.,* 240 F.R.D. 216, 223 (N.D.W.Va.2007) (quoting *Carlson v. Freightliner LLC,* 226 F.R.D. 343, 363 (D.Neb.2004) (quoting *United States v. Philip Morris Inc.,* 347 F.3d 951, 954 (D.C.Cir.2003))). In *Ayers,* the court set forth the following list of factors to consider in determining whether to excuse a waiver: (1) the length of the delay; (2) the reason for the delay; (3) whether the responding party acted in bad faith or engaged in any dilatory action; (4) whether the requesting party has been prejudiced; (5) whether the request was overly burdensome; and (6) whether waiver would impose a harsh result on the defaulting party. *Id.* (quoting *Hall v. Sullivan,* 231 F.R.D. 468, 474 (D.Md. 2005)).

In determining whether "good cause" exists to excuse National Interstate's failure to respond to Cargill's discovery in this case, the Court will consider these factors and address National Interstate's arguments.

### 3. The Circumstances Do Not Support Excusing National Interstate's Waiver

Although it does not appear that National Interstate acted in bad faith or that Cargill would be terribly prejudiced by excusing National Interstate's waiver, the Court does not consider these *Ayers* factors in a vacuum. National Interstate concedes that its responses were due sometime in mid-February 2012. (Audio Recording of May 23, 2012 Hr'g ("Hr'g Tr.") at 9:38:27–9:38:42.) Fully aware of this deadline, National Interstate did not file any answers to Cargill's discovery requests until May 16, 2012, approximately three months after they were due. National Interstate does not argue that a simple oversight or administrative error caused this delay. Nor does National Interstate contend that some unforeseen circumstances caused the delay despite its exercise of diligence in attempting to answer the discovery within the time permitted. Thus, this case involves a lengthy delay, with no effort at all by National Interstate to respond to the discovery within a reasonable time after its responses were due, no indication that there was an excusable oversight, and no evidence that National Interstate sought to discuss its view of its discovery obligations with Cargill when it received the subject discovery requests. These circumstances weigh against excusing the waiver.

Further, it does not appear that a waiver would impose an unduly harsh result on National Interstate. According to National Interstate's counsel, it has already produced documents to Cargill that may arguably include privileged or work-product material. (Hr'g Tr. at 10:03:13–10:03:26) (informing the Court that "[t]o the extent they asked for claim notes, they got a complete and unredacted copy of every claim note our client gave us up until the date when we anticipated Cargill may be suing us for bad faith, as counsel said that's March 24th of 2011"). If indeed National Interstate has produced ma-

terials that would otherwise qualify for protection under the attorney-client privilege or the work-product doctrine, it has apparently reached the conclusion that disclosure of those materials (or at least some subset thereof) either does not impose an unduly harsh burden on it or that they may be used to its advantage to counter Cargill's claim of bad faith denial of insurance benefits. This factor also suggests that excusing National Interstate's waiver of its objections is not appropriate here.

As further support for its position, National Interstate provided the Court with a copy of a letter from Cargill's counsel dated March 29, 2012, one day after Cargill sent National Interstate a separate letter demanding National Interstate's discovery responses. (Mar. 29, 2012 letter from Cynthia P. Arends to Christopher Goodman, provided to the Court at the hearing, attached hereto as Appendix A.) In the March 29 letter, on certain conditions, Cargill offered to stay its claims against National Interstate until after Cargill's claims against Burge Trucking have been resolved. (*Id.* at 1.) Cargill's counsel indicated that Cargill would sign a stipulation if National Interstate provided it with a draft. (*Id.*) At the hearing, National Interstate informed the Court that the parties spent some time over the next few weeks attempting to work out such a stipulation, but they were ultimately unable to reach any agreement. (Hr'g Tr. at 9:40:33–9:42:28.) But Cargill's March 29 offer to stipulate to sever its claims against National Interstate and the ensuing negotiations does not excuse National Interstate's continued failure to respond to discovery. And it does not explain why National Interstate made no response to Cargill's discovery from mid-February when its discovery responses first came due through March 29.

Moreover, once National Interstate received the March 29 letter, it had several options under the Rules. It could have asked Cargill to stipulate to an informal stay of discovery under Rule 29, or sought such relief from the Court. It could have sought Cargill's agreement to an extension of the 30–day response deadline at any point prior to the filing of Cargill's motion. *See* Fed.

R.Civ.P. 33(b)(2). And if that failed, it could have filed a motion for protective order asking the Court to forbid the discovery sought by Cargill or to impose conditions on National Interstate's obligation to respond. *See* Fed.R.Civ.P. 26(c)(1)(A)–(B). It could even have decided to serve its discovery responses and interpose its objections to that discovery on whatever grounds it deemed prudent. Instead, National Interstate chose to make no response to Cargill's discovery at all and to seek no protection from the Court, and that, simply, cannot establish good cause to excuse its waiver of objections.

In its opposition papers, the only other discussion National Interstate provided that is relevant to the waiver inquiry is its argument that its pending motion for summary judgment raised issues that may have obviated the need to respond to discovery at all. (*See* Nat'l Interstate's Mem. at 3–4 ("National Interstate argued its obligation to produce its claim file was dependent on Cargill having standing to pursue relief directly from National Interstate, especially since the liability of Burge has not been established."); Hr'g Tr. 9:44:05–9:46:16 (arguing that National Interstate was not obligated to respond to Cargill's discovery at all under Minnesota law as a part of its "substantial justification" position).) Essentially, National Interstate contends that a party can unilaterally decide to place its discovery obligations under Rules 33 and 34 on hold when it files a dispositive motion challenging its amenability to suit on a specific claim. But that proposition finds no support in either Rule 33 or 34, and National Interstate offers no other authority to support it. *See* 8B Charles A. Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2173 (3d ed. 2010) ("It is inappropriate for a party to decide for itself that an interrogatory is improper."). For the waiver provision in Rule 33, and, by implication, Rule 34, to mean anything, a party cannot unilaterally determine that it is entitled to a stay of discovery and maintain its objections to discovery requests that it never responded to.

Based on the foregoing National Interstate has failed to show good cause why the Court should excuse its waiver of objections to Cargill's First Set of Interrogatories to Defen-

dant National Interstate Insurance Corp. (Rolf Decl. ¶ 2, Ex. A), and to Cargill's Request for Production of Documents to Defendant National Interstate Insurance Corp. (*Id.* ¶ 3, Ex. B).[2] National Interstate's objections, including its attorney-client privilege and work-product objections, are therefore stricken. And National Interstate must provide Cargill with revised answers to Cargill's interrogatories and document requests removing all of the objections asserted.

### 4. National Interstate's Mootness Argument

National Interstate next argues that the relief Cargill requests in its motion to compel is now moot because National Interstate has produced everything that Cargill asked for in discovery. (Nat'l Interstate Mem. at 1; *see also* Goodman Aff. ¶¶ 2–3, Exs. A & B (demonstrating that Cargill has received National Interstate's answers to its interrogatories and document requests).)

However, it is altogether unclear whether all documents requested have been produced. At the hearing, counsel for National Interstate represented to the Court that, although National Interstate interposed at least one objection to a document request seeking its claim file on the grounds of attorney-client privilege and the work-product doctrine, it has not withheld any documents on the basis of privilege. (Hr'g Tr. at 9:48:48–9:49:24.) But toward the end of the hearing, counsel for National Interstate also stated the following: "To the extent [Cargill] asked for claim notes, they got a complete and unredacted copy of every claim note our client gave us *up until the date when we anticipated Cargill may be suing us for bad faith....*" (Hr'g Tr. at 10:03:13–10:03:26 (emphasis added).) The written answer to Cargill's document Request No. 4 includes this same qualification. (Goodman Aff. ¶ 3, Ex. B. at 3 ("Additionally National Interstate produces the claim notes generated after it received notice of Leprino's loss on September 7, 2010, through March 24, 2011, *when Cargill first contended that National Interstate had*

*failed to defend or indemnify Cargill.*") (emphasis added).) As Cargill argued at the hearing, National Interstate's responses imply that Cargill did not receive any claim notes created after March 24, 2011, and that, presumably, National Interstate has withheld post-March 24, 2011 claim notes on the ground that such notes constitute protected work-product information. Therefore, the Court cannot conclude that Cargill's motion is moot. Because National Interstate has waived all of its objections to Cargill's initial discovery requests, including its privilege and work-product objections, it would be inappropriate for it to withhold any post-March 24, 2011 claim notes on the grounds of privilege or work-product protection if the claim notes fall within the scope of Cargill's document Request No. 4.

At this time (except as discussed below with respect to Cargill's document Request No. 8), the Court will not decide whether National Interstate's response to any specific interrogatory or production of documents is incomplete because the Court lacks the information necessary to resolve questions as to the scope of specific discovery requests Cargill has made, the extent of National Interstate's production in response to those requests, whether any privilege log should have been provided, and other potential issues remain open. Therefore, when Cargill receives National Interstate's revised discovery responses and any further document production disclosed in accordance with this Order and Memorandum, if Cargill believes that National Interstate is withholding information that was requested and should be produced, the parties must meet and confer regarding any purported deficiency, and, if they are unable to resolve the dispute, Cargill should file another motion supported by a memorandum of law and other supporting documentation addressing the specific discovery requests at issue. The Court described this approach to the parties at the hearing. (Hr'g Tr. at 9:59:49–10:00:38; *id.* at 10:01:38–10:01:57.) The Court also directs the parties'

---

**2.** The Court stresses that this ruling does not apply to any other objections that National Interstate may have asserted in response to other discovery Cargill may have served in the interim, or that Cargill may serve after receipt of this Order and Memorandum. No such discovery is before the Court.

attention to District of Minnesota Local Rule 37.2, which describes the requirements for motions presenting discovery disputes in this District.

### 5. National Interstate Need Not Answer Document Request No. 8

■ The foregoing discussion notwithstanding, the Court will not require National Interstate to respond to Cargill's document Request No. 8. (Goodman Aff. ¶ 3, Ex. B. at 7.) That request asks National Interstate to produce:

> The claims files relating to every claim National Interstate denied during the period starting one year before the incident and extending to the present, in which a demand was made against an insured for more than the policy limits.

(*Id.*) As drafted, this request seeks irrelevant information and is overbroad. This request does not seek information that is reasonably calculated to lead to the discovery of admissible evidence, Fed.R.Civ.P. 26(b)(1), and it would not serve the Court's obligation to administer the Rules "to secure the just, speedy, and inexpensive determination" of this action to order National Interstate to respond to this request. *See* Fed.R.Civ.P. 1.

At the hearing, Cargill's counsel contended that Cargill wants this information to show that National Interstate has a pattern or practice of denying or undervaluing insurance claims where the claim exceeds the policy limits. (Hr'g Tr. at 9:56:26–9:57:00.) Cargill's counsel then directed the Court's attention to the Minnesota Supreme Court's decision in *Boerger v. American General Insurance Co.*, 257 Minn. 72, 100 N.W.2d 133 (1959), to support its argument that statements made in claims files relating to other claims are relevant in a bad-faith action. But in *Boerger*, the only "[s]tatements by the insurance company's counsel and claims manager" addressed by the court were made in relationship to the claim at issue, not some pattern or practice derived from statements made about other, unrelated claims. *See id.* at 135–36; *see also id.* at 134–35 (referring to the insurance company's counsel's statements

concerning the liability of the insured for the claim at issue). Ohio [3] cases concerning discovery of claims files in bad-faith actions likewise appear to focus on the statements made in the claims file for the claim at issue, not on the insurer's pattern or practice of handling other claims. *See, e.g., Mundy v. Roy*, No. 2005–CA–28, 2006 WL 522380, at *5 (Ohio Ct.App. Mar. 3, 2006) (discussing propriety of discovery of the claims file for the claim at issue); Stephen S. Ashley, *Bad Faith Actions Liability & Damages* § 10:28 (2011) ("Insurance bad faith cases are won or lost on the contest of the insurer's claims files."). Accordingly, Cargill has not shown that discovery of an insurer's handling of other claims is relevant to supporting its bad-faith claim against National Interstate or likely to lead to the discovery of admissible evidence. Accordingly, National Interstate need not answer Request No. 8.

### B. Rule 37 Sanctions

Cargill has also asked the Court to sanction National Interstate under Federal Rule of Civil Procedure 37 because National Interstate lacked substantial justification to oppose Cargill's motion to compel. (Doc. No. 56.) Under Rule 37(a)(5)(A), if the Court grants a motion to compel discovery responses, or if the responding party provides the requested discovery "after the motion was filed, the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion." Fed.R.Civ.P. 37(a)(5)(A). A court must not order this payment, however, if the movant failed to confer or attempt to confer in good faith prior to filing the motion. Fed.R.Civ.P. 37(a)(5)(A)(i). Similarly, if the party opposing the motion had a substantial justification for failing to make a response or if "other circumstances make an award of expenses unjust," the court must not order the payment of expenses. Fed.R.Civ.P. 37(a)(5)(A)(ii)–(iii).

---

**3.** Nothing in this Order should be construed as determining whether Ohio or Minnesota law ap-

plies to certain claims in this action.

■ Here, the Court has granted Cargill's motion and National Interstate did not provide answers to Cargill's discovery until after the motion was filed, thus triggering Rule 37(a)(5)(A). Cargill has also certified that it attempted in good faith to obtain the discovery sought without court action. *See* Fed. R.Civ.P. 37(a)(5)(A)(i); (Doc. No. 59, Cargill's Rule 37 Certification for Meet and Confer.) Therefore, the only remaining issues are whether National Interstate's position was substantially justified or whether other circumstances make an award of expenses unjust.

National Interstate asserts that its failure to provide discovery responses and its opposition to the motion to compel were substantially justified because it had filed a motion for summary judgment arguing that Cargill had no standing to assert a bad-faith claim. (Nat'l Interstate Mem. at 3–4.) But, as discussed above, National Interstate provides no support for the proposition that a party is excused from its discovery obligations merely because it files a dispositive motion. *See* discussion, *supra*, at 426–27. Just as the pendency of National Interstate's motion for summary judgment does not constitute good cause on which to excuse its waiver of discovery objections, the fact that such a motion was filed does not provide substantial justification for National Interstate's refusal to comply with discovery.

Nor does the fact that the parties were negotiating, as of March 29, 2012, whether to sever the litigation against Burge Trucking from Cargill's claims against National Interstate provide substantial justification for National Interstate's refusal to respond to Cargill's discovery. (*See* Appendix A.) There is no evidence that Cargill agreed to extend the deadline for National Interstate's discovery responses or that National Interstate even asked for one while those negotiations were underway. Thus, Cargill's right to obtain the discovery it sought and National Interstate's duty to provide it never changed. Furthermore, presumably after negotiations had ended, National Interstate still did not provide discovery responses until a week after Cargill filed its motion to compel, and even then included objections that had been waived. Therefore, Cargill had to file a motion to obtain responses to its initial discovery requests, and it had to litigate the issue of waiver to have National Interstate's objections stricken.

For all the reasons outlined above, National Interstate was not substantially justified in its failure to provide discovery, and the Court finds no other circumstances that make an award of expenses unjust. Therefore, the Court awards Cargill its reasonable fees and expenses incurred in making its motion to compel. Based on the papers filed, however, the Court cannot determine what amount the award of fees and expenses should be at this time. Within five days of the date of this Order and Memorandum, Cargill must file with the Court an affidavit and any other supporting documentation to show the fees and costs incurred in making the motion to compel. No later than five days after Cargill's submissions are due, National Interstate may file a letter brief in response of no more than two pages if it disputes any of the specific fees and costs claimed by Cargill.

APPENDIX A

**nilan
johnson
lewis** PA

400 • ONE FINANCIAL PLAZA
120 SOUTH SIXTH STREET
MINNEAPOLIS • MN 55402
P 612 305 7500   F 612 305 7601

Cynthia P. Arends
Direct Dial: (612) 305-7525
Fax: (612) 305-7501
Email: carends@nilanjohnson.com

March 29, 2012

*Original by U.S. Mail – Copy by electronic mail - chris.goodman@lindjensen.com*
Christopher L. Goodman
Lind Jensen, Sullivan & Peterson
150 Fifth Street, Suite 1700
Minneapolis, MN  55402

RE:   Cargill v Ron Burge Trucking, Inc.
      **U.S. District Court No. 11-CV-02394 PAM/JJK**
      Our File: 52228-0002

Dear Mr. Goodman:

I am writing regarding National Interstate's Motion for Summary Judgment and/or to sever claims against it. Cargill disputes that National Interstate is entitled to either remedy. Cargill also notes that curiously, it its last motion, National Interstate fully briefed the choice-of-law issue and argued that Ohio, not Minnesota, law should apply to the claims against it, yet in this motion National Interstate bases its entire argument on Minnesota law.

However, Cargill also recognizes that separating and staying its claims against National Interstate until after the claims against Burge are resolved may serve the interest of the efficient use of all parties' and the Court's resources. Therefore, Cargill will agree to stipulate to separate its claims against National Interstate and stay litigation of those claims until resolution of its claims against Burge. Cargill suggests the claims be separated under Rule 42, rather than sever under Rule 21. A Rule 21 severance would require a new docket and judicial assignment, which unnecessarily complicates matters and future proceedings and lose the benefit of a judge who will already be familiar with the issues and the parties. If you are in agreement, Cargill will sign a stipulation to that effect if you provide one to me.

I would ask that before filing the stipulation that National Interstate sign the agreed-upon stipulation for a protective order so that Cargill's and Burge's confidential documents that National Interstate has filed can be withdrawn from the public domain and filed under seal.

432

Christopher L. Goodman
March 29, 2012
Page 2

Please contact me if you have any questions. Absent that, I await receiving a stipulation to stay Cargill's claims against your client.

Very truly yours

Cynthia P. Arends

United States District Court,
D. Minnesota.